The parties were divorced in May 1994. The father was ordered to pay $750 per month in child support for the parties' four-year-old son. On November 28, 1994, the father filed a petition to modify his child support obligation, based on the fact that he had been incarcerated since September 28, 1994, and no longer received any type income. Following a hearing on the petition, the trial court increased the amount of child support to $874 per month and assessed an arrearage of $8,250. This judgment was entered on July 21, 1995.
The father filed a motion for a new trial or, in the alternative, for reconsideration. Based upon that motion, the trial court revisited its July 1995 judgment. On October 27, 1995, the trial court entered a revised judgment, in which it ordered the father to pay $750 per month in child support. The trial court further found the father to be in arrears in the amount of $1,500. The father appeals.
The trial court's July 1995 order sufficiently relays the facts of this case. In increasing the father's child support obligation to $874 per month and in finding an arrearage of $8,250, the trial court stated the following:
 "1. [T]he parties were divorced by a decree rendered by this court on May 10, 1994, and under the provisions of said decree, the [father] was ordered to pay unto the [mother] the sum of $750.00 as support and maintenance for the minor child born of the parties.
 "2. The [father] paid such support through the month of August 1994, and he has paid no payments since the month of August 1994.
 "3. [The father's] petition to modify the payment of support and maintenance was filed in the clerk's office on November 4, 1994, and the $750.00 per month child support for September and October of 1994 were due prior to the filing of the petition for modification.
 "4. . . . the testimony revealed that [the father] sold all of his equipment used in his business operations, and after the payment of the indebtedness covering such equipment, he had the sum of $61,000.00; the testimony further revealed that the [father] had sold some real estate owned by him, and after the payment of the mortgage indebtedness covering such real estate, he had the sum of $17,000.00 left; it thus appears that the [father's] sale of these properties during this year gave him a gross income in the total sum of $78,000.00.
 "5. Rule 32, Child Support Guidelines, defines income for the purpose of the guidelines as established by the rules. "Income" means actual gross income of a parent. "Gross Income" includes income from any source.
 "6. It thus appears that the [father] has a gross income for the year 1995 in the sum of $78,000.00, which computes to an average monthly gross income of $6,500.00.
 "7. The [mother] filed a child support obligation income statement affidavit which sets forth that her average monthly gross income is the sum of $908.74, that her monthly expense for employment-related child care was the sum of $43.33, and that her health insurance premium for insurance covering the child born of this marriage was the sum of $87.50 per month.
 "8. The child support guidelines worksheet, with the parties having an average monthly gross income as aforesaid, shows that the [father] has an 88% share of income *Page 1146 
and the [mother] has a 12% share of income and that the recommended child support to be paid by the [father] is the sum of $873.69.
 "9. It is undisputed that the [father] has paid no child support since August 1994, and is without question that there are 11 monthly payments in arrearage, and the court finds that based upon the $750.00 per month by the prior court orders, the arrearage is now in the sum of $8,250.00."
In his post-judgment motion, the father alleged that the trial court's order was not supported by the evidence.
Following a hearing on the motion, the trial court entered the following order:
 "Upon reconsideration, the court finds that [the father] should pay $750.00 monthly as child support until further orders of this court. [The father's] arrearage is determined by the court to be a total of $1,500.00 for the months of September and October. [The father] is to pay $50.00 per month toward arrearage commencing November 1, 1995; all other orders remain the same."
The July 1995 order specifically reflects how the trial court calculated the child support payments to correspond with the evidence and the Rule 32 guidelines. The October 1995 order is at odds with the order entered in July 1995. The October 1995 order fails to reflect how the child support payments were recalculated so as to correspond with the evidence and the Rule 32 guidelines.
We are aware that the determination to grant a Rule 59(e) motion is a matter of discretion with the trial court and that its decision is presumed correct. In this instance, however, with the two contradictory orders, we are unwilling to exercise that presumption. Covington v. Covington, 675 So.2d 436
(Ala.Civ.App. 1996). With the record before us, we are unable to discern what, if anything, made the trial court recalculate its award of child support in the manner that it did.
The record does not reflect how the October 1995 child support payments were calculated by the trial court, and the payments do not correspond with the evidence and the Rule 32 guidelines. Consequently, the trial court's October 1995 order is reversed and the cause remanded for the trial court to redetermine the child support payments in accordance with the evidence and with Rule 32. Turberville v. Turberville,617 So.2d 284 (Ala.Civ.App. 1992).
The fact that the father is in prison and unemployed is a matter for consideration in determining his ability to pay.Grogan v. Grogan, 608 So.2d 397 (Ala.Civ.App. 1992). If the father nevertheless has property or funds available to him, support may be ordered therefrom. Smith v. Smith, 631 So.2d 252
(Ala.Civ.App. 1993).
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN and MONROE, JJ., concur.