824 A.2d 1169

**Lydia A. YERKES, Appellee,**

v.

**Keith A. YERKES, Appellant.**

Supreme Court of Pennsylvania.

Submitted Feb. 26, 2002.

Decided May 30, 2003.

Keith A. Yerkes, for Keith A. Yerkes, pro se.

Albert J. Meier, for Lydia A. Yerkes.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION OF THE COURT*

Justice NIGRO.

The question presented in this case is whether incarceration, standing alone, is a "material and substantial change in circumstances" that provides sufficient grounds for modification or termination of a child support order. We hold that it is not.

Appellant Keith A. Yerkes ("Father") and Appellee Lydia A. Yerkes ("Mother") were married in November 1978 and separated in August 1992. During their marriage, the parties had two children: Amy, born in January 1983, and Richard, born in August 1988. Immediately following the parties' separation, Mother sought child support from Father. The parties eventually reached an agreement for support in November 1992, whereby Father was to pay one hundred dollars per week for the support of Amy and Richard. Later the same month, the Court of Common Pleas of Lancaster County ordered compliance with the agreement and further directed that it be accomplished by payroll deductions from Father's regular paychecks.

In 1994, Father was arrested for sexually assaulting Amy, who was eleven years old at the time. He was ultimately convicted of aggravated indecent assault and has been incarcerated for that crime since August 1994. Father is currently imprisoned at the State Correctional Institute at Huntingdon, Pennsylvania ("SCI–Huntingdon"), and will be released by August 2004.

In May 1997, Father petitioned the trial court for modification or termination of the November 1992 support order. The parties were directed to meet at a support conference to take place in August 1997, although Father did not appear because of his incarceration. Following the conference, the conference officer recommended that the petition be dismissed on account of Father's conviction for assaulting Amy, who was a beneficiary of the support order. The trial court agreed and dismissed Father's petition later in August 1997.

In September 1997, Father filed exceptions and requested a hearing *de novo* before the trial court, which was held in May 1999.[1] Mother appeared at the hearing in person and Father

1. In December 1997, while Father's hearing request was pending, the Domestic Relations Section of the Court of Common Pleas of Lancaster County petitioned for a contempt adjudication against Father for his failure to pay child support, claiming that Father was $17,085.00 in arrears as of that time. The record reveals that a contempt hearing was scheduled for January 1998, but reveals no further details regard-

appeared, *pro se,* by telephone from SCI–Huntingdon. Father's sole argument at the hearing was that he was financially unable to pay his child support obligation because of his incarceration. Specifically, he maintained that his wage of forty-one cents per hour at SCI–Huntingdon only yielded a monthly salary of approximately fifty dollars.[2] He claimed that such a salary made it impossible for him to satisfy his child support obligation, which he alleged was based on his former salary of $241.58 per week. Moreover, Father claimed to have no other assets.

Following the hearing, the trial court dismissed Father's exceptions and ratified the August 1997 order. Father appealed, and the Superior Court affirmed in a memorandum decision. 782 A.2d 1068 (Pa.Super.2001) (table). We granted Father's petition for allowance of appeal, 567 Pa. 764, 790 A.2d 1018 (2001), and now affirm.

The thrust of Father's argument is that his support obligation should be modified or terminated because he is unable to pay due to his imprisonment and the inadequate wage he earns at SCI–Huntingdon. In making this argument, he alleges that there is a conflict among Superior Court decisions regarding the effect of imprisonment on child support obligations. He also contends that the trial court erred in essentially adopting a *per se* rule barring modification or termination where the victim of the parent's criminal acts is also the beneficiary of the support order. Accordingly, he claims that the trial court should have modified or terminated his support obligation. We disagree.

The principal goal in child support matters is to serve the best interests of the child through provision of reasonable expenses. *Oeler by Gross v. Oeler,* 527 Pa. 532, 594 A.2d 649, 651 (1991); *Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318, 1322 (1987) (plurality). The duty of child support, "as every other duty encompassed in the role of parenthood, is

ing the contempt proceedings. By June 2000, Father's arrears had reached $28,798.29.

2. According to the trial court, Father's gross prison wages were $68.88 in May 1997 and $52.28 in June 1997.

the equal responsibility of both mother and father." *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324, 326 (1974). As this duty is "absolute," *Larson v. Diveglia,* 549 Pa. 118, 700 A.2d 931, 932 (1997), it must be discharged by the parents "even if it causes them some hardship." *Sutliff,* 528 A.2d at 1322; *see also* 23 Pa.C.S. § 4321(2) ("Parents *are liable* for the support of their children who are unemancipated and 18 years of age or younger." (emphasis added)). That said, reality dictates that the parental obligation of support be guided by the parents' respective capacities and abilities, which depend on the parents' property, income, and earning capacity. *Costello v. LeNoir,* 462 Pa. 36, 337 A.2d 866, 868 (1975); *Conway,* 318 A.2d at 326. These capacities and abilities are to be assessed at the time that child support payments are sought. *Costello,* 337 A.2d at 868; *see also Labar v. Labar,* 557 Pa. 54, 731 A.2d 1252, 1253 n. 1 (1999) (citing *Costello* rule).

To give effect to the requirement of reasonable financial support, the Pennsylvania Rules of Civil Procedure provide a comprehensive set of guidelines for the appropriate amount of child support to be contributed by each parent. *See generally* Pa.R.C.P. No.1910.16–1 to 1910.16–7. In each child support matter, the support contribution indicated by the guidelines is entitled to a strong presumption of correctness. *See* 23 Pa.C.S. § 4322(b); Pa.R.C.P. No.1910.16–1(d); *Ball v. Minnick,* 538 Pa. 441, 648 A.2d 1192, 1196 (1994); *see also Mascaro v. Mascaro,* 569 Pa. 255, 803 A.2d 1186, 1189–91 (2002) (reciting rules containing presumption). Once a support order is in effect, "[a] petition for modification ... may be filed at any time and shall be granted if the requesting party demonstrates a substantial change in circumstances." 23 Pa.C.S. § 4352(a); *see also* Pa.R.C.P. No.1910.19 (stating standard for modification). Accordingly, it is the petitioning parent's burden to "specifically aver the material and substantial change in circumstances upon which the petition is based." Pa.R.C.P. No.1910.19(a); *see also Colonna v. Colonna,* 788 A.2d 430, 438 (Pa.Super.2001) (*en banc* ) (stating that burden is on moving party), *appeal granted,* 569 Pa. 678, 800 A.2d 930 (2002). A finding of either a "material and substantial change

in circumstances" or no such change is reviewed on appeal for an abuse of discretion. *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 834 (2002); *Larson*, 700 A.2d at 932. "An abuse of discretion occurs where there is an error in judgment, a manifestly unreasonable decision, or a misapplication of law." *Larson*, 700 A.2d at 932; *see also Bowser*, 807 A.2d at 834 (defining "abuse of discretion" standard).

This Court has never directly addressed whether incarceration, standing alone, is a "material and substantial change in circumstances" that provides sufficient grounds for modification or termination of a child support order. A review of cases from other jurisdictions, however, reveals a wealth of case law that can be loosely categorized into three groups, each of which represents a different approach to assessing the effect of incarceration on support obligations. *See In re Marriage of Thurmond*, 265 Kan. 715, 962 P.2d 1064, 1068–72 (1998) (identifying approaches and collecting cases); *Halliwell v. Halliwell*, 326 N.J.Super. 442, 741 A.2d 638, 644–45 (App.Div. 1999) (same); *see also* Frank J. Wozniak, Annotation, *Loss of Income Due to Incarceration as Affecting Child Support Obligation*, 27 A.L.R. 5th 540 (1995) (collecting and discussing cases). The first approach, dubbed the "no justification" rule, generally deems criminal incarceration as insufficient to justify elimination or reduction of an open obligation to pay child support.[3] *See Thurmond*, 962 P.2d at 1068–70; *Halliwell*, 741

---

**3.** At least fifteen jurisdictions appear to adhere to this approach, including: Arizona, *see State ex rel. Dep't of Econ. Sec. v. Ayala*, 185 Ariz. 314, 916 P.2d 504, 508 (Ct.App.1996); Arkansas, *see Reid v. Reid*, 57 Ark. App. 289, 944 S.W.2d 559, 562 (1997); Connecticut, *see Shipman v. Roberts*, No. FA000630559, 2001 WL 761030, at *6, 2001 Conn.Super. LEXIS 1653, at *27 (Conn.Super.Ct. June 7, 2001); Delaware, *see Division of Child Support Enf. ex rel. Harper v. Barrows*, 570 A.2d 1180, 1183 (Del.1990); Indiana, *see Davis v. Vance*, 574 N.E.2d 330, 331 (Ind.Ct.App.1991); Kansas, *see In re Marriage of Thurmond*, 265 Kan. 715, 962 P.2d 1064, 1073 (1998); Kentucky, *see Commonwealth ex rel. Marshall v. Marshall*, 15 S.W.3d 396, 401 (Ky.Ct.App.2000); Louisiana, *see State v. Nelson*, 587 So.2d 176, 178 (La.Ct.App.1991); Montana, *see Mooney v. Brennan*, 257 Mont. 197, 848 P.2d 1020, 1023–24 (1993); New Hampshire, *see Noddin v. Noddin*, 123 N.H. 73, 455 A.2d 1051, 1053–54 (1983); New York, *see Matter of Knights*, 71 N.Y.2d 865, 527 N.Y.S.2d 748, 522 N.E.2d 1045, 1046 (1988); North Dakota, *see Koch v. Williams*, 456 N.W.2d 299, 302 (N.D.1990); Ohio, *see Richardson v.*

A.2d at 644. The second approach, known as the "complete justification" rule, generally deems incarceration for criminal conduct as sufficient to justify elimination or reduction of an existing child support obligation.[4] *See Thurmond,* 962 P.2d at 1070–71; *Halliwell,* 741 A.2d at 644–45. Finally, the third approach is the "one factor" rule, which generally requires the trial court to simply consider the fact of criminal incarceration along with other factors in determining whether to eliminate or reduce an open obligation to pay child support.[5] *See Thurmond,* 962 P.2d at 1071–72; *Halliwell,* 741 A.2d at 645.

The fundamental disagreement between those courts applying a "no justification" rule and those adopting one of the other two rules hinges on whether relief should ever be granted to incarcerated parents. It appears that each court's

*Ballard,* 113 Ohio App.3d 552, 681 N.E.2d 507, 508 (1996); Oklahoma, *see State ex rel. Jones v. Baggett,* 990 P.2d 235, 245–46 (Okla.1999); and Utah, *see Proctor v. Proctor,* 773 P.2d 1389, 1391 (Utah App.1989).

4. At least seven jurisdictions appear to adhere to this approach, including: California, *see In re Marriage of Smith,* 90 Cal.App.4th 74, 108 Cal.Rptr.2d 537, 543–45 (2001); Idaho, *see Nab v. Nab,* 114 Idaho 512, 757 P.2d 1231, 1238 (1988); Maryland, *see Wills v. Jones,* 340 Md. 480, 667 A.2d 331, 339 (1995); Michigan, *see Pierce v. Pierce,* 162 Mich.App. 367, 412 N.W.2d 291, 292–93 (1987); Minnesota, *see Franzen v. Borders,* 521 N.W.2d 626, 629–30 (Minn.Ct.App.1994); Oregon, *see In re Marriage of Willis & Willis,* 314 Or. 566, 840 P.2d 697, 699 (1992); and Washington, *see In re the Marriage of Blickenstaff & Blickenstaff,* 71 Wash.App. 489, 859 P.2d 646, 650–51 (1993).

5. At least nine jurisdictions appear to adhere to this approach, including: Alabama, *see Alred v. Alred,* 678 So.2d 1144, 1146 (Ala.Civ.App. 1996); Alaska, *see Bendixen v. Bendixen,* 962 P.2d 170, 173 (Alaska 1998); Colorado, *see In re Marriage of Hamilton,* 857 P.2d 542, 544 (Colo.Ct.App.1993); Illinois, *see In re Burbridge,* 317 Ill.App.3d 190, 250 Ill.Dec. 510, 738 N.E.2d 979, 982 (2000); Iowa, *see In re Marriage of Walters,* 575 N.W.2d 739, 743 (Iowa 1998); Missouri, *see Oberg v. Oberg,* 869 S.W.2d 235, 238 (Mo.Ct.App.1993); New Mexico, *see Thomasson v. Johnson,* 120 N.M. 512, 903 P.2d 254, 256–57 (Ct.App.1995); Texas, *see Hollifield v. Hollifield,* 925 S.W.2d 153, 156 (Tex.App.1996); and Wisconsin, *see Parker v. Parker,* 152 Wis.2d 1, 447 N.W.2d 64, 65–66 (App.1989). The factors taken into account include the reason the obligated parent entered prison, the length of incarceration, the financial circumstances, the potential for work release, the amount of the existing child support award, and the total amount of child support that will have accumulated upon the incarcerated parent's discharge. *See Burbridge,* 250 Ill.Dec. 510, 738 N.E.2d at 982; *Hamilton,* 857 P.2d at 544; *Oberg,* 869 S.W.2d at 238.

ultimate conclusion on this issue is driven by three underlying considerations: (1) whether allowing relief to an incarcerated parent serves the best interests of the child, (2) whether relief is in accord with fairness principles, and (3) whether it is appropriate to treat incarceration in the same manner as voluntary unemployment.

With regard to the first consideration, *i.e.*, whether relief serves the best interests of the child, courts invoking the "no justification" rule often maintain that it is in the best interests of the child for the support order to remain intact because of the possibility of future reimbursement. *E.g., Reid,* 944 S.W.2d at 562; *see also Nelson,* 587 So.2d at 178 (reasoning that obligor's support obligation can be satisfied after release from prison). Moreover, some courts that have adopted this rule emphasize that a downward modification does not benefit the child whose best interests are at stake, but instead benefits only the obligor. *E.g., Richardson,* 681 N.E.2d at 508; *Baggett,* 990 P.2d at 245–46. On the other hand, those jurisdictions that reject the "no justification" rule often counter that such an approach to the best interests principle is unrealistic:

> [Under the "no justification" rule,] the child support judgment will not be paid during the time that the parent is incarcerated, and therefore the judgment will simply accrue with interest. Such a situation provides little or no benefit to anyone. The children do not receive the benefit of the proceeds during the time they require the funds, and the parent is simply confronted with a large, nondischargeable judgment upon release from prison, at a time when the prospect of paying a large judgment with interest is extremely unlikely. At current interest rates the judgment will double every 6 or 7 years. How this can be in the children's best interest is difficult . . . to imagine.

*Pierce,* 412 N.W.2d at 293 (quoting *Ohler v. Ohler,* 220 Neb. 272, 369 N.W.2d 615, 618–19 (1985) (Krivosha, C.J., dissenting)); *see also Nab,* 757 P.2d at 1238 (reasoning that continuation of support obligation of incarcerated parent provides no present benefit to child).

Having considered the arguments on both sides of this issue, we conclude that the best interests of the child are better served by the "no justification" rule than by a rule that would allow suspension of the support obligation during an obligor's incarceration. As the Appellate Division of the Superior Court of New Jersey has cogently explained:

> We perceive two possible scenarios. In the first, the obligor is incarcerated and the support obligation is not suspended. Payments go into arrears. Upon release, the obligor cannot pay both current support and arrears, so only the current support is paid. In the second scenario, the obligor is incarcerated and the obligation is suspended during incarceration. Upon release, the obligor resumes paying the pre-incarceration support obligation. . . .
>
> In both situations, the child receives no support during the obligor's incarceration, and in both, the child begins to receive support upon the obligor's release. The children in these situations are essentially in the same circumstances. The only difference is that the obligor in scenario two has no arrearage debt. Thus, the scenario-one child suffers during the obligor's incarceration, but there is a possibility of compensation at some point in the future. The scenario-two child also suffers during the obligor's incarceration, but there is no realistic chance that the substantial arrearage will ever be fully paid.
>
> The scenario-one child potentially receives a benefit because (s)he may see some of the arrearage payments; the scenario-one obligor receives no benefit. The scenario-two child receives no benefit, potential or otherwise. Rather, it is the scenario-two obligor who receives the benefit because the arrearage debt has been eliminated. Thus, scenario two works to the benefit of the obligor, while scenario one works to the benefit of the child, at least theoretically. The scenario-two child essentially takes on a burden because the obligor has been relieved temporarily of the parental duty of support.
>
> Thus, the argument that it is not in the best interest of the child to continue the obligation is without merit. The question is not which situation is better for the child;

neither situation is beneficial while the obligor is incarcerated. The question is which scenario is worse. Clearly, it is scenario two, in which the child has no real hope of ever seeing the missed support payments to which (s)he is entitled. . . .

*Halliwell,* 741 A.2d at 645–46 (footnote omitted).[6] We agree with the New Jersey court that, although none of the three rules will provide short-term relief to the child, the "no justification" rule at least provides for the possibility that the obligor will repay the support owed to the child. Consequently, as stated above, the "no justification" rule is the approach that is in the best interests of the child. *See Oeler,* 594 A.2d at 651 (purpose of child support is to promote best interests of child); *Sutliff,* 528 A.2d at 1322 (same).

With regard to the second consideration, *i.e.,* which approach is most "fair," proponents of the "no justification" rule often reason that fairness principles dictate that an obligor should not benefit from criminal conduct or be allowed to use it as a means to escape child support obligations.[7] *E.g., Mooney,* 848 P.2d at 1023; *Nelson,* 587 So.2d at 178. These

**6.** The following commentary further supports the analysis of the New Jersey court, though in more practical terms:

A prison sentence is often referred to as payment for a debt to society. However, a prisoner's debt is hardly being paid if the prisoner is simultaneously incurring another debt to society by failing to pay child support obligations. Therefore, if the parent is unable to pay child support during incarceration, this "second" debt can and should be repaid upon release. This is not an additional punishment or fine, but is a simple reimbursement to the state for what the parent was obligated to pay in the first place. Likewise, public policy considerations require that other family members or private individuals who paid the child support owed by the obligor during the obligor's incarceration, should be reimbursed for their expenditures. Private individuals should not be forced to assume the responsibility and obligations of the incarcerated parent any more than the state should.

Karen Rothschild Cavanaugh & Daniel Pollack, *Child Support Obligations of Incarcerated Parents,* 7 Cornell J.L. & Pub. Pol'y 531, 551 (1998) (footnote omitted).

**7.** Alternatively, some courts invoking a fairness rationale have reasoned that the equitable doctrine of "unclean hands" operates to foreclose relief to incarcerated parents. *E.g., Reid,* 944 S.W.2d at 562; *Barrows,* 570 A.2d at 1184.

courts often opine that because the needs of the children have not changed, their needs must prevail over the difficulties of the incarcerated parent. *E.g., Reid,* 944 S.W.2d at 562. On the other hand, those rejecting the "no justification" rule argue that fairness weighs in favor of the obligor because, without relief, the obligor parent would be saddled with an onerous burden upon release from prison. *E.g., Ohler,* 369 N.W.2d at 618–19 (Krivosha, C.J., dissenting); *Mooney,* 848 P.2d at 1024 (Trieweiler, J., dissenting); *Nab,* 757 P.2d at 1238; *Pierce,* 412 N.W.2d at 292–93.

On balance, we believe that fairness principles also weigh in favor of the "no justification" rule, primarily because affording relief to the incarcerated parent would effectively subordinate child support payments to the parent's other financial obligations. *See Thurmond,* 962 P.2d at 1073 ("Why should an inmate's child support obligation be subject to modification or suspension by virtue of the parent's incarceration when ... restitution order[s are] unaffected by incarceration?"); Cavanaugh & Pollack, *supra* note 6, at 550 ("When people are incarcerated, they are not relieved of their other financial responsibilities, such as making car payments. A child should be afforded at least the same legal status." (footnote omitted)). In Pennsylvania, child support obligations are considered to be of such importance that parties must give them priority over other expenses. *See, e.g.,* Pa.R.C.P. No.1910.16–1(a) ("The support of a spouse or child is a priority obligation so that a party is expected to meet this obligation by adjusting his or her other expenses."); Pa.R.C.P. No.1910.16–1 (Explanatory Comment—1998) ("The guidelines make financial support of a child a primary obligation."); Pa.R.C.P. No.1910.21(g) ("If there are multiple support obligations ... the court shall allocate among the obligees the amount of income available for withholding, giving priority to current child support....").[8] As such, we simply cannot justify relieving incarcerated parents of their child support obligations when they are not

8. The requirement of priority reflected in these rules accords with Pennsylvania's strong policy favoring payment of child support. *See Larson,* 700 A.2d at 932; *Sutliff,* 528 A.2d at 1322; 23 Pa.C.S. § 4321(2); *accord Koch,* 456 N.W.2d at 302; *Mooney,* 848 P.2d at 1023.

relieved of their other financial obligations.[9] Accordingly, we are compelled to agree with those courts adopting the "no justification" rule that fairness counsels in favor of the continuation of support.

Finally, with regard to the third consideration, *i.e.*, whether it is appropriate to analogize incarceration to voluntary unemployment, courts following the "no justification" rule often liken obligors who are sent to prison for criminal conduct to those who voluntarily assume lower paying jobs or leave their jobs.[10]  *E.g., Mooney,* 848 P.2d at 1023;  *Marshall,* 15 S.W.3d at 401.  As the Supreme Court of Montana stated:

> Criminal conduct of any nature cannot excuse the obligation to pay support.  We see no reason to offer criminals a

**9.**  In addition, the argument that the "no justification rule" unfairly burdens incarcerated parents upon their release from prison is undermined by the fact that, in Pennsylvania, the General Assembly has enacted a statute under which incarcerated obligors are prevented from being placed in an impossible position upon release on account of significant arrearages.  *See* 23 Pa.C.S. § 4348(g) (limiting attachment of child support obligations and arrears to percentage set forth in federal Consumer Credit Protection Act).  Moreover, we note that significant arrearages will not ordinarily result in a contempt adjudication, as any failure to pay support upon the parent's release will likely be justifiable given his or her inability to comply with the support order at that time.  *See* 23 Pa.C.S. § 4345 (requiring willful failure to comply with support order for contempt adjudication);  Pa.R.C.P. No.1910.25–1(b) (requiring finding of willfulness and a present ability to comply prior to contempt adjudication for failure to pay child support).  We also note that the continuation of the support obligation required by the "no justification rule" does not burden the parent during incarceration, as the Commonwealth provides the basic needs of any obligor who is incarcerated.  *See Koch,* 456 N.W.2d at 301–02.

**10.**  In Pennsylvania, "[w]here a party voluntarily assumes a lower paying job, there generally will be no effect on the support obligation," and "[a] party will ordinarily not be relieved of a support obligation by voluntarily quitting work or by being fired for cause."  Pa.R.C.P. No.1910.16–2(d)(1).  In construing this rule, the Superior Court has required that a party seeking modification after a voluntary reduction in income show (1) that the change was not made for the purpose of avoiding child support, and (2) that reduction is warranted based on the party's efforts to mitigate the lost income.  *See Grimes v. Grimes,* 408 Pa.Super. 158, 596 A.2d 240, 242 (1991);  *see also Kersey v. Jefferson,* 791 A.2d 419, 423 (Pa.Super.2002).  "Otherwise, for calculation of a support obligation, the petitioner will be considered to have an income equal to his or her earning capacity as defined in the support guidelines."  *Grimes,* 596 A.2d at 242.

reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the incarcerated person has control over his actions and should be held to the consequences.... [An obligor] should not be able to escape his financial obligation to his children simply because his misdeeds have placed him behind bars. The meter should continue to run.

*Mooney*, 848 P.2d at 1023 (citation omitted); *see also Richardson*, 681 N.E.2d at 508 (reasoning that imprisonment is a foreseeable result of criminal activity). On the other hand, the Supreme Court of Alaska has rejected the analogy to voluntary unemployment:

Although incarceration is often a foreseeable consequence of criminal misconduct and all criminal acts are in some sense voluntary, non-custodial parents who engage in criminal misconduct seldom desire the enforced unemployment that accompanies incarceration; nor can they alter their situation; and, in stark contrast to parents who consciously choose to remain unemployed, jailed parents rarely have any actual job prospects or potential income. Equating incarceration to voluntary unemployment would require us to ignore these significant, real-life distinctions.

*Bendixen*, 962 P.2d at 173; *see also Franzen*, 521 N.W.2d at 629 (reasoning that incarceration is usually an involuntary condition).

Upon consideration of these competing arguments, we agree with the courts favoring the "no justification" rule that it is appropriate to analogize incarceration to voluntary unemployment. As the Supreme Court of Kansas explained:

The specific language utilized in some of the cases supporting [the "no justification"] rule to the effect that incarceration is similar to quitting a job to avoid paying child support and that in both situations, the inability to pay is "voluntary" stretches reality a bit. Most inmates would have difficulty accepting the concept that their incarceration is to be considered "voluntary." It is more accurate to say that a

reduction of income from a cause beyond the obligor's control (such as illness, injury, lay-off, etc.) should be considered differently from those which arise from causes within his or her control. Criminal activity foreseeably can lead to incarceration and such activity is obviously within an individual's control. Public policy considerations heavily favor the no-justification rule.

*Thurmond,* 962 P.2d at 1073. We agree with the Supreme Court of Kansas that, as it is foreseeable that criminal conduct can lead to incarceration, a reduction in income occasioned by criminal incarceration is clearly within the control of the obligor. Thus, we conclude that an incarcerated obligor, though in somewhat different circumstances from a voluntarily unemployed obligor, has control over his or her circumstances similar to that of a voluntarily unemployed obligor. Accordingly, it is appropriate to treat these two types of obligors alike. *Accord Halliwell,* 741 A.2d at 647; *Baggett,* 990 P.2d at 245; *see also* 23 Pa.C.S. § 4322(a) ("Child and spousal support shall be awarded pursuant to a statewide guideline ... so that persons similarly situated shall be treated similarly.").

In sum, we conclude that the "no justification" rule best serves the interests of the child and is in harmony with fairness principles and the child support laws of Pennsylvania.[11] Under the "no justification" rule, it is clear that incarceration, standing alone, is not a "material and substantial change in circumstances" providing sufficient grounds for modification or termination of a child support order.[12] In this case, Father was incarcerated for sexually assaulting his

**11.** In addition to being in accord with Pennsylvania law, the "bright-line" nature of the "no justification" rule is also advantageous because it prevents the burdensome case-by-case determinations that occur under the "one factor" rule. *See Thurmond,* 962 P.2d at 1072–73. The "no justification" rule will also result in the filing of fewer modification petitions than necessarily occurs under the "complete justification" rule. *See id.*

**12.** In *Leasure v. Leasure,* 378 Pa.Super. 613, 549 A.2d 225 (1988), the Superior Court held that a child support obligation should be suspended where the obligor is incarcerated. To the extent that *Leasure* conflicts with the approach we adopt today, we disapprove of it.

daughter.[13] His sole argument in support of his petition for modification or termination of his child support obligation was that his incarceration made him unable to pay. Thus, Father cannot obtain relief from his child support obligations. Accordingly, the Superior Court did not err in affirming the trial court's dismissal of Appellant Keith A. Yerkes' petition for modification or termination of his child support obligation.

The order of the Superior Court is affirmed.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a concurring opinion.

Justice SAYLOR, concurring.

Although I see merit in the majority's approach, I would endorse the Superior Court's, which reposed substantial discretion in the trial court to assess the fact of incarceration as one factor in determining whether to grant a petition for modification or termination of child support, particularly in the absence of a specific legislative directive otherwise. *See Leasure v. Leasure,* 378 Pa.Super. 613, 616–17, 549 A.2d 225, 226–27 (1988) (stating that the trial court should consider, *inter alia,* the length of incarceration and the assets of the incarcerated parent in reviewing a petition for modification or suspension of child support payments); [1] *see also Kelley v. Kelley,*

**13.** We note that the result dictated by the rule we adopt today is particularly appropriate given these circumstances. *See Reid,* 944 S.W.2d at 562 (holding that relief is prohibited where "[t]he misconduct which resulted in appellant's imprisonment was perpetrated against a child for whom appellant owed a duty of support . . . ."); *see also* Lewis Becker, *Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine,* 29 Conn. L.Rev. 647, 718–19 (1997) ("consideration of the nature of the crime seems appropriate where the crime involves a personal assault on the party adversely affected by a voluntary reduction of income").

**1.** Although some jurisdictions have viewed *Leasure* as embracing the complete justification rule, *see, e.g., Halliwell v. Halliwell,* 326 N.J.Super. 442, 741 A.2d 638, 645 (1999); *In re Marriage of Thurmond,* 265 Kan. 715, 962 P.2d 1064, 1070–71 (1998), others have more appropriately categorized it as adopting the one factor rule. *See In re Marriage of Burbridge,* 317 Ill.App.3d 190, 250 Ill.Dec. 510, 738 N.E.2d 979, 982 (2000); *In re Marriage of Hamilton,* 857 P.2d 542, 544 (Colo.Ct.App. 1993).

444 Pa.Super. 286, 288, 663 A.2d 785, 786 (1995) (holding that the fact of incarceration is "but one of several factors" that the trial court must consider in deciding whether to suspend support payments). In any event, given the particular circumstances of this case, I find no abuse of discretion in the trial court's denial of Appellant's petition for termination.

Justice EAKIN, concurring.

I join the majority opinion, which properly holds that, "incarceration, standing alone, is not a 'material and substantial change in circumstances' providing sufficient grounds for modification or termination of a child support order." *Yerkes v. Yerkes*, 151 MAP 2001, at 13 (footnote omitted). Although I completely agree with this statement, I cannot agree that incarceration is not a substantial change of circumstance; it clearly is, and we should not, and need not, avoid saying so.

We need not because the heart of the matter is the second half of the phrase, not the first. The proper question is whether this is a change that allows an existing support obligation to be modified or terminated. While incarceration should be acknowledged to be a significant change of circumstance, it may not be grounds for modification or termination of a child support order, as a matter of public policy.[1]

---

1. Courts have the independent authority to discern public policy in the absence of legislation. *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231, 1237 (1998). "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring." *Lurie v. Republican Alliance*, 412 Pa. 61, 192 A.2d 367, 370 (1963) (quoting *Mamlin v. Genoe*, 340 Pa. 320, 17 A.2d 407, 409 (1941); *Commonwealth ex rel. Fox v. Swing*, 409 Pa. 241, 186 A.2d 24, 27 (1962) (Bell, J., concurring)).