# Wolf v. Wolf

C.P. of Monroe County, no. 4877 Civil 2002.

*Susan Wolf,* pro se.
*Salvatore P.J. Vito,* for Jane Wolf.
*James V. Fareri,* for East Stroudsburg Savings Assn.
*Jonathan Wolf,* pro se.

WALLACH MILLER, *J.,* November 13, 2003— Pennsylvania's strong public policy favoring the strict enforcement of child support orders collides in this case with a well-established rule of civil procedure governing priority of distribution as between competing plaintiffs. For the reasons that follow, this court gives a support lien priority over all other competing liens.

Jonathan Wolf is the holder of two bank accounts at the East Stroudsburg Savings Association in Stroudsburg, Pennsylvania. Mr. Wolf, who is unable to be located, owes debts to two different individuals, both of whom have liens on the bank accounts at issue. Mr. Wolf's mother, Jane Wolf, recorded a $43,000 judgment against Mr. Wolf in Monroe County on July 12, 2002. Mr. Wolf's former wife, Susan Wolf, transferred a New Jersey child support judgment to Monroe County on May 23, 2003. As of October 2, 2003, Mr. Wolf is indebted to Susan Wolf in the amount of $21,976.40. This case stems from a request by Jane Wolf to the sheriff to levy upon Mr. Wolf's accounts at East Stroudsburg Savings Association to satisfy her lien and Susan Wolf's motion to set aside that levy.

The crux of this case is whose lien should have priority over Mr. Wolf's bank accounts—Jane Wolf's lien, because it was recorded first, or Susan Wolf's lien, because her judgment against Mr. Wolf is for child support arrearages.

Jane Wolf relies on Pa.R.C.P. 3137, which states that distribution "shall be determined from the date of service of the writ upon the garnishee in the case of an attachment." Susan Wolf relies on federal law, most notably 42 U.S.C. §666, a recently amended provision of the Social Security Act that requires states to give support collection priority over all other liens. Jane Wolf argues in response that section 666 does not require states to give support liens priority, and that Pennsylvania has enacted no statute or rule of civil procedure that states likewise.

An analysis of the Social Security Act's child support enforcement provisions is necessary because under the U.S. Constitution, a federal scheme prevails over a state law application. U.S. Const. Article VI, Section 2. This court is required to follow federal law when it conflicts with a Pennsylvania statute or rule.

Child support, as well the entire field of family law, was traditionally the province of the several states. "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593-94, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890), quoted in *Martin v. Martin,* 385 Pa. Super. 554, 560, 561 A.2d 1231, 1234 (1989), *appeal granted,* 525 Pa. 627, 578 A.2d 414 (1990), *appeal dismissed as improvidently granted,* 528 Pa. 348, 598 A.2d 28 (1991). However, during the last third of the twentieth century, Congress began to legislate in matters that were traditionally left to the states. Family law was no exception.

The first foray by Congress into child support enforcement came in 1974 when Title IV-D of the Social Security Act was passed. Pub. L. no. 93-647, 88 Stat. 237

(1974) (codified as amended at 42 U.S.C. §§651-70 (2003)). Title IV-D established, inter alia, the Office of Child Support Enforcement and the Federal Parent Locator Service. In 1984, amendments to Title IV-D required states to establish commissions on child support as well as several new methods of child support enforcement, such as wage withholding, income tax intercepts, and liens. Pub. L. no. 98-378, 98 Stat. 1305.

Incremental changes in the federal child support enforcement regime in the early 1990s climaxed in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA). Pub. L. no. 104-193, 110 Stat. 2105 (codified at scattered sections of 42 U.S.C.). PRWORA required states to strengthen their child support enforcement provisions in a myriad of ways, ranging from establishing paternity through genetic testing to enforcing support orders through license revocations and criminal penalties. Of interest to our case are PRWORA's provisions that require states to adopt laws that place liens on an obligor's real and personal property and allow states to seize funds from bank accounts. See 42 U.S.C. §666(a).

Specifically, states are required to have procedures under which "liens arise by operation of law against real and personal property for amounts of overdue support owed by a noncustodial parent who resides or owns property in the state." Section 666(a)(4)(A). While section 666(a) details the new procedures required to be implemented by the states, section 666(b) provides in more detail how a state should implement the "withholding from income of amounts payable as support" provision of section 666(a)(1). Notably, section 666 (b)(7) states "support collection under this subsection must be given

priority over any other legal process under state law against the same income."

The question is whether section 666(b)(7) applies in this case. It is undisputed that Susan Wolf is owed child support arrearages. Should her lien on Mr. Wolf's bank accounts be given priority over Jane Wolf's lien, even though Jane Wolf's lien is first-in-time? It seems clear that section 666(b) is meant to apply to a standard wage attachment, a common provision of child support enforcement. If Mr. Wolf was working and having his wages attached in order to pay his child support, there is no doubt that whatever debt he owed to Jane Wolf would be a second priority after his child support order. But in cases like the instant one, where the noncustodial parent ostensibly has disappeared, standard wage attachment does not work. Would the intent of Congress be that for these child support scofflaws, support collection would be seen as just another debt that the individual needed to pay, and that the custodial parent who is owed support should simply get in line with all other creditors?

We find such an idea to be not only revolting, but also contrary to the intent of Congress. It was the intent of Congress for states to make it easier, not harder, to enforce child support orders. The regime of placing liens on an obligor's real and personal property, of suspending driver's licenses and providing criminal penalties for those not paying child support is evidence of this intent. In addition, section 666(a)(1)(B) provides that when obligors who are not subject to withholding create arrearages, such obligors will become subject to the provisions of section 666(b). This is further evidence that it was the intent of Congress that when child support arrearages develop, these arrearages should have first priority over all other debts that an obligor may owe.

Pennsylvania's strong policy favoring payment of child support has resulted in an elaborate child support enforcement regime, some portions of which have been adopted in response to PRWORA. See *Yerkes v. Yerkes,* 573 Pa. 294, 305 n.8, 824 A.2d 1169, 1175 n.8 (2003). Unpaid support obligations automatically constitute a judgment against the obligor by operation of law. 23 Pa.C.S. §4352(d). Overdue support can also become a lien on real property within the county in which the overdue support is on record at the county domestic relations office. Section 4352(d.1); Pa.R.C.P. 1910.22. Overdue support does not currently create a lien on an obligor's personal property. Pa.R.C.P. 1910.22, cmt.; *Commonwealth v. $1,074.00,* no. 1397 Civil 2001, slip op. (C.P. Monroe September 25, 2001). However, child support arrearages may be reduced to a judgment of record and satisfied through levy of execution on both real and personal property. Pa.R.C.P. 1910.24; 23 Pa.C.S. §4366.

Even though Pennsylvania has an extensive child support enforcement regime, there is no case law, statute, or rule that this court can locate that explicitly states that child support liens take precedence over other liens on an obligor's property. However, 42 U.S.C. §666(b) (7) requires this court to give first priority over Mr. Wolf's bank accounts to Susan Wolf. Her claim for child support arrearages must precede Jane Wolf's claim against Mr. Wolf. This is consistent with the text of section 666(b)(7), the entire federal child support enforcement regime, as well as Pennsylvania's statutory provisions regarding child support.

It is worth noting that in some of our sister states, child support liens have priority over other liens, even liens

that were recorded first. See *Commonwealth Edison v. Denson,* 494 N.E.2d 1186 (Ill. App. 1986). In New York, CPLR 5242 states that support has priority over any other "assignment, levy, or process."

CPLR 5242 was recently interpreted by the New York Supreme Court, in a case in which "the real issue pits the interests of child support against everyone else." *Daniels v. Monroe County Child Support Collection Unit,* 196 Misc.2d 595, 763 N.Y.S.2d 461, 462 (Sup. Ct. 2003). In *Daniels,* the petitioner had settled a lawsuit for $7,500, and the court's task was to determine which of four liens had priority over the $7,500. The court decided that the petitioner's attorney's charging lien had first priority, reasoning that without the attorney's work, there would be no funds from which to pay child support. Next, the court found that a workers' compensation lien had the next highest priority, since the child support unit already had an opportunity to seize these funds. The child support lien had the third priority, followed by a debt petitioner owed to a former landlord.

*Daniels* is not binding on this court, but it is noteworthy that child support received a higher priority than a debt for back rent. The *Daniels* court did not discuss the recent amendments to the Social Security Act, but that is understandable in light of the CPLR's explicit provision that grants support liens priority over all other liens.

The comprehensive changes to the Social Security Act in 1996 clearly show that Congress wanted to give highest priority to the enforcement of child support. One scholar has noted that the only way PRWORA could have been made stronger would be "turning the entire enforcement process over to the federal government." Linda D.

Elrod, *Child Support Reassessed: Federalization of Enforcement Nears Completion,* 1997 U. Ill. L. Rev. 695, 703. It is in keeping with the legislative intent behind PRWORA and the explicit text of section 666(b)(7) that this court gives first priority over Mr. Wolf's bank accounts to Susan Wolf.

## ORDER

And now, November 13, 2003, the motion of Susan Wolf to set aside the sheriff's levy is granted. East Stroudsburg Savings Association is directed to release the funds held in account number **-**-********** in the name of Jonathan Wolf with Tax ID no. ***-**-**** and any other accounts found in the name of Jonathan Wolf to the Hunterdon County Probation Division, 65 Park Avenue, Flemington, New Jersey 08822 to be applied to arrearages in the case of *Susan Wolf v. Jonathan Wolf,* docket no. FM-10-275-00; case no. CS71904976A; judgment no. J-076989-02.