J-A30028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARTA M. LLAURADO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAVIER GARCIA-ZAPTA | |
| Appellant | No. 707 EDA 2015 |

Appeal from the Order February 2, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2013-00556; PACSES: 256113852

BEFORE:  MUNDY, J., JENKINS, J., and FITZGERALD, J.[*]

MEMORANDUM BY JENKINS, J.:　　　　　　**FILED DECEMBER 21, 2015**

Appellant Javier Garcia-Zapata ("Father") appeals from the February 2, 2015 order entered in the Delaware County Court of Common Pleas, which allocated spousal and child support to Appellee Marta M. Llaurado ("Mother") and the parties' three minor children, who reside with Mother.  We quash in part and affirm in part.

The parties were married on October 10, 1989, in New Orleans, LA, and had three children, the youngest of whom is three years old.  The children currently reside with Mother and Mother's parents in Florida.  On May 17, 2013, Mother filed a complaint against Father for divorce, equitable

_____

[*] Former Justice specially assigned to the Superior Court.

distribution of marital property, alimony, alimony pendent lite, spousal support, and attorney's fees.

On December 17, 2013, the trial court filed a support order based on Father's income of $13,317.00 per month and Mother's income of $0 per month and awarded Mother $3,176.00 of spousal support, monthly, and $2,730.00 of child support, monthly. On March 24, 2014, the support master issued recommendations, including a wage attachment.

The trial court set forth the relevant procedural history of this appeal as follows:

> On or about March 31, 2014, [Father] filed exceptions from the Master's March 24, 2014 support recommendations. On or about April 9, 2014, [Mother] filed a contempt petition against [Father]. The *de novo* support hearing and the contempt petition were scheduled [for a hearing on] June 6, 2014. At the June 6, 2014 hearing, the support matter was relisted and the trial court put [Father] in Nonfinancial Obligation Status, per his request and held the contempt in abeyance.
>
> Multiple review hearings were held on the contempt petition and support appeal on the following additional dates: July 15, 2014, September 10, 2014 and December 15, 2014. Importantly, the contempt petition had been held in abeyance at all the prior hearings. On December 15, 2014, scheduled for a review of the contempt [petition], the trial court issued an order dated December 15, 2014 which held the contempt in abeyance, ordered [Father] to obtain employment, ordered a review of [Father's] liquidated assets and finally ordered [Father] to produce the whereabouts of a boat, which was titled to [Mother] and relisted the matter for February 2, 2015.
>
> During the February 2, 2015 hearing, scheduled to address both the *de novo* support and the contempt against [Father], the trial court permitted testimony and evidence

with respect to not only the parties' income and earning capacity for purposes of determining support but also information of, or concerning, [Father's] liquidated assets available to satisfy arrears and monthly support obligations consistent with the trial court's order dated December 15, 2015.

At the conclusion of the February 2, 2015 hearing, the trial court issued two separate orders. One such order, dated February 2, 2015[,] dealt solely with the support matter finding a base [child] support of $2,383.00, spousal support in the amount of $2,560.00 for a total monthly base order of $4,943.00 plus arrears at the standard ten (10) percent (hereafter "February 2015 Support Order"). The second order, likewise dated February 2, 2015[,] addressed [Father's] contempt whereby the trial court again held the contempt in abeyance to review payments and relisted the matter for May 4, 2015 (hereafter "February 2015 Contempt Order").

[On March 4, 2015, Father] timely appealed the February 2015 Support Order although a portion of [Father's] complaints deal exclusively with considerations the trial court undertook in deciding the February 2015 Contempt Order, which did not find Appellant in contempt.

Trial Court 1925(a) Opinion, filed May 11, 2015, at 1-2 (some capitalization omitted).

On March 9, 2015, the trial court ordered Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied on March 25, 2015.

Father raises the following issues for our review:

1. WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FAILING TO CONSIDER ANY DOWNWARD DEVIATION OF THE SUPPORT OBLIGATION GIVEN THE FACT THAT [MOTHER] HAS EITHER NO OR SUBSTANTIALLY REDUCED LIVING EXPENSES?

2. WHETHER THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY IMPUTING A PURPORTED EARNING CAPACITY TO [FATHER] IN THE AMOUNT [OF] $154,137.00/ YEAR?

3. WHETHER THE TRIAL COURT ERRED AND /OR ABUSED ITS DISCRETION BY FAILING TO GRANT [FATHER] ANY RELIEF DURING THE PERIOD OF TIME THAT HE WAS UNEMPLOYED?

Father's Brief at 4.

As a preliminary matter, we must determine whether this is a final and appealable order. On April 6, 2015, this Court ordered Father to show cause within 10 days as to the appealability of the issues regarding spousal support because the divorce decree had not been entered and all economic claims had not been resolved. Father did not respond. On April 20, 2015, in accordance with the rule to show cause and Father's failure to respond, this Court ordered that only the portion of the order in child support would be referred to the panel assignment to decide the merits of the appeal, but noted that order was not a final determination as to the propriety of the appeal.

"It is well-recognized that a spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved." **Capuano v. Capuano**, 823 A.2d 995, 998 (Pa.Super.2003) (citing **Fennell v. Fennell**, 753 A.2d 866, 867 (Pa.Super.2000); **Deasy v. Deasy**, 730 A.2d 500, 502 (Pa.Super.1999), *appeal denied,* 753 A.2d 818 (Pa.2000)). During the pendency of a divorce

action, "the portion of a trial court order attributable to child support is final and immediately appealable; however, the portion of an order allocated to spousal support is interlocutory." *Id.*

Here, because the divorce action is still pending, Father's issues that relate to spousal support are interlocutory, but his issues regarding child support are immediately appealable. Thus, we quash the appeal to the extent it relates to spousal support and proceed to the merits of this appeal as they relate to child support.

In child support cases, our standard of review is as follows:

> The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. *Kessler v. Helmick,* 672 A.2d 1380, 1382 ([Pa.Super.]1996) (quoting *Griffin v. Griffin,* 558 A.2d 75, 77 ([Pa.Super.]1989) (*en banc*)). For our purposes, "an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality."

*Isralsky v. Isralsky*, 824 A.2d 1178, 1186 (Pa.Super.2003) (quoting *Portugal v. Portugal*, 798 A.2d 246, 249 (Pa.Super.2002)).

"In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests." *Brickus v. Dent*, 5 A.3d 1281, 1284 (Pa.Super.2010).

- 5 -

In his first issue, Father argues the court erred by failing to deviate downward from the child support guidelines based on the fact that Mother has few expenses because she is living with her parents. We disagree.

The Support Guidelines provide, in relevant part:

**(a) Applicability of the Support Guidelines.**

(1) Except as set forth in subdivision (2) below, the support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' net monthly incomes as defined in Rule 1910.16-2 and the number of persons being supported.

Pa.R.C.P. No. 1910.16-1.

Under the guidelines, the amount of the support award determined by application of the grids and formulas is presumed to be correct, and that presumption is rebutted only where "the trier of fact makes a written finding, or a specific finding on the record, that an award in the amount determined from the guidelines would be unjust or inappropriate" Pa.R.C.P. 1910.16-1(b).

***McGinnis v. McGinnis***, 654 A.2d 563, 565 (Pa.Super.1995).

Pa.R.C.P. 1910.16-5(b) provides the following factors for the trier of fact to consider in deciding whether to deviate from the amount of support determined by the guidelines:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) the relative assets and liabilities of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. No. 1910.16-5(b).

These factors are the *only* factors that a trier of fact may consider in determining whether to deviate. Thus, the trier of fact does not have unfettered discretion to, in each case, deviate from the recommended amount of support. Deviation will be permitted only where special needs and/or circumstances are present such as to render an award in the amount of the guideline figure unjust or inappropriate.

*McGinnis*, 654 A.2d at 565 (internal quotations and citations omitted).

Here, in declining to deviate from the guidelines, the trial court reasoned:

Based upon the testimony and evidence presented, [Mother] is the primary caregiver of three children, one of whom is three years old. [Mother], with no job and not able to collect support from [Father], has no source of income for housing and is forced to reside with her parents. No evidence was presented to the trial court during the course of the hearing to establish that [Mother] had the financial capacity to obtain paid housing, but [chose] instead to live with her parents to obtain a windfall from [Father]. The trial court therefore found no basis to downwardly modify [Father's] support obligation based upon the sole fact that [Mother] resides with her parents, which this court found was a choice driven by financial necessity.

Trial Court Opinion, at 6 (some capitalization omitted).

We see no abuse of discretion in the trial court's refusal to deviate from the guidelines based on the fact that Mother and the children reside with Mother's parents. Accordingly, Father's first claim fails.

In his second issue, Father argues the court erred in computing his earning capacity. He claims the court merely averaged two "random and not very recent tax years," and ignored all other factors it was required to consider, most importantly the length of time Father has been out of the relevant workforce. Again, we disagree.

"[T]he support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' net monthly incomes as defined in Rule 1910.16-2 and the number of persons being supported." Pa.R.C.P. No. 1910.16-1(a)(1).

> [A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. **Hoag v. Hoag**, 646 A.2d 578 ([Pa.Super.]1994). Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. **See DeMasi v. DeMasi**, 597 A.2d 101 ([Pa.Super.]1991). Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history. **Gephart v. Gephart**, 764 A.2d 613 (Pa.Super.2000).

**Woskob v. Woskob**, 843 A.2d 1247, 1251 (Pa.Super.2004).

> Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. Pa.R.C.P. 1910.16-2(d)(4). A determination of earning capacity must consider the party's age, education, training, health, work

- 8 -

experience, earnings history, and child care responsibilities. ***Id.; Kersey v. Jefferson***, 791 A.2d 419, 423 (Pa.Super.2002). ***Accord DeMasi v. DeMasi***, 530 A.2d 871, 877 ([Pa.Super.]1987) (holding that "[a] parent's ability to pay support is determined primarily by financial resources and earning capacity.... The obligation of support, then, is measured more by earning capacity than by actual earnings.")

***Isralsky v. Isralsky***, 824 A.2d 1178, 1188 (Pa.Super.2003).

Here, the trial court reasoned:

The trial court candidly explained on the record how it arrived at an earning capacity for [Father].[2] Indeed, the trial court found that [Father] had a net annual earning capacity of $131,016, or "$10,918 per month." (N.T. 2/12/2015, at p.98-99). Although the net monthly figure was not included in the body of the February 2015 Support Order, it was stated on record. Furthermore, the trial court did not impute an annual net income of $149,613.00, but the record is clear that [Father's] net annual income was imputed at $131,016.00.

[2] The Court: "I took [Father's] income from 2010 and 2011, the full income, not the income on his tax returns, so I included back in the pre-401(k) deduction. I took those two years, averaged them, and-came up with $154,137. I'm finding that is his earning capacity. I allowed 15-percent for taxes. That was the rate that the parties paid when they were residing together, based on their 2011 tax return, which netted him $131,016, or $10,918 per month." (N.T. 2/12/[2015], at p. 98).

\* \* \*

During the case history, the trial court has afforded [Father] ample time and opportunity to obtain employment commensurate with his specialized knowledge and expertise. [Father] has an engineering degree and a Master's Degree in Business Administration. (N.T., 2/12/2015, at p. [64]). [Father] also has had at least since August 2013 to locate employment. (N.T.,

2/12/2015, at p. 55). Indeed, the record reflects that [Father] was terminated from a high-paying position at NRG in August 2013 whereby he had a base salary of $205,000 and bonus pay between $40,000-$50,000 (N.T., 2/12/2015, at p. 11). Before [Father's] employment with NGR, he worked at First Choice Power earning a base salary of $105,000-$106,000 with substantial bonus opportunity. (N.T., 2/12/2015, at p. 11-12). In spite of [Father's] long spanning history as a high earner, he testified during the course of hearing that he could only obtain a $30,000/year job with a bonus incentive working at WMS Consulting Marketing Services (hereafter "WMS"). (N.T., 2/12/2015, at p. 15). [Father] testified, however, that WMS is owned and/or operated by a friend of [Father's], who used to work for [Father], calling into question the authenticity of [Father's] attempts to establish meaningful employment as opposed to merely appearing compliant with the trial court's numerous directives to locate meaningful employment for a person of his qualifications.

Indeed, the trial court on two separate occasions put [Father] into Non-Financial Obligation Status to help him obtain employment as well as holding contempts against [Father] in abeyance. (N.T., 2/12/2015, at p. 29). Based upon the testimony and evidence presented, however, it appears the trial court took more action to secure employment for [Father] than [Father] did himself. [Father] testified that he hired a recruiter to "develop a brand and a resume." (N.T., 2/12/2015, at p. 42-43). [Father], however, was unable to produce a written contract to the trial court with respect to the recruiter and the duties associated therewith. [Father] likewise testified that he hired someone to manage his LinkedIn account and that he joined TheLadders.com. (N.T., 2/12/2015, at p. 42-43). No copies of applications, resumes, nor rejection letters were produced from potential employers. Furthermore, [Father] offered nothing to substantiate his testimony about an "e-mail campaign" by the recruiter leaving the trial court without pertinent information, such as how many companies were recipients of these e-mails purportedly sent on [Father's] behalf. Given the leeway the trial court had afforded [Father] to aid in finding employment comparable to his past earnings, [Father's]

testimony failed to demonstrate a good faith attempt. Instead, [Father] appeared in court with a meager offer letter from a friend with an abysmal salary, for a person of his qualifications and background.

*    *    *

It is unfathomable to this court given [Father's] past earnings, expertise in his area, and ample time afforded to him that he cannot find a job that offers in excess of what is tantamount to minimum wage. Therefore, the trial court was justified in imputing income by averaging the lower of his past earnings.

Trial Court Opinion at 9-10 (some capitalization omitted and some commas added).

The trial court's reasoning is sound and does not show an abuse of discretion. Father complains that he cannot pay the support because he is now incarcerated for being in contempt for not paying the support and has no income.[1] He, however, has been in control of this situation since he got laid off from his high-paying job. Although he claims he was trying to find employment, he could have tried harder or secured a job like the $30,000.00 per year position he held at the hearing, which would have provided some income while he was looking for a better job. Father is educated, trained in his field, healthy, has a history of high earnings, and has no childcare responsibilities. The court considered this and used older

---

[1] Father was incarcerated at the conclusion of the May 4, 2015 contempt proceedings for failing to pay support.

tax returns so as not to reflect the highest possible amount Father could earn. Father's second issue merits no relief.[2]

In his third issue, Father argues the court erred by failing to afford him relief from his monthly obligation pursuant to the negotiated terms of the December 11, 2013 support order. He claims that in exchange for allowing support payments to start on August 8, 2013 instead of when he received his severance package on October 31, 2013, "the matter [of reducing his support] was to be 'relisted for a Master's Hearing in early/mid February 2014, in order to calculate/recalculate support from March 7, 2014 forward, depending on [Father's] job status as of that date." Father's Brief at 14.

Father has waived this issue of a bargained-for exchange by failing to raise it in his Pa.R.A.P. 1925(b) statement. *See Majorsky v. Douglas*, 58 A.3d 1250, 1259 (Pa.Super.2012)*, appeal denied,* 70 A.3d 811 (Pa.2013) ("failure to raise an issue in a Rule 1925(b) statement 'shall' result in waiver of that issue."). Further, this issue is meritless for several reasons. First, Father cannot bargain away the rights of his three children. *See Kesler v. Weniger*, 744 A.2d 794, 796 (Pa.Super.2000) ("In Pennsylvania, a parent cannot bind a child or bargain away that child's right to support.") To the

_____

[2] Further, the trial court did not abuse its discretion in not finding Father's incarceration provided grounds for modification of his child support obligation. *See Yerkes v. Yerkes*, 824 A.2d 1169, 1177 (Pa.2003) ("Under the 'no justification' rule, it is clear that incarceration, standing alone, is not a 'material and substantial change in circumstances' providing sufficient grounds for modification or termination of a child support order.").

extent Father is arguing the court failed to consider that he was unemployed for a significant period of time, the trial court considered Father's unemployment and found him to be at fault for being unemployed. Further, the court held his contempt in abeyance several times to help him to secure employment.

Accordingly, we affirm the order of February 2, 2012 as it relates to child support and quash the appeal as it relates to spousal support.

Order affirmed in part; appeal quashed in part.

Justice Fitzgerald joins in the memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2015