MOORE, Judge,
concurring in the result, but dissenting from the rationale.
On April 25, 2009, Victor G. Suggs (“the father”) filed a complaint in the Covington Circuit Court (“the trial court”) seeking a divorce from Melissa Suggs (“the mother”). In the complaint, the father alleged that one child had been born of the parties’ marriage, that he was incarcerated in the St. Clair County Correctional Facility, and that there was no real or personal marital property to be divided. With that complaint, the father filed an affidavit of substantial hardship in which he indicated that he had no income and no liquid assets. Based on that affidavit, the trial court granted the father a waiver of the filing fees. The mother subsequently filed an answer, an amended answer, and a counterclaim in which she, among other things, admitted all the allegations in the complaint, sought custody of the parties’ child, and requested child support.
After setting the case for a final hearing and continuing the hearing one time, the trial court conducted a trial on September 3, 2009, at which the only evidence presented consisted of the oral testimony of the mother. In that testimony, the mother stated that one child, then 11 years old, had been born of the parties’ marriage, that no joint property existed, and that she was seeking child support “pursuant to the guidelines.” The mother then testified that she was currently unemployed and that, although the father previously had “had a restaurant” and previously had worked as a truck driver, he had been incarcerated since 2002 or 2003, he was serving “like 150 years,” and she did not expect him to be released. Immediately *928 following that testimony, the trial court stated: “Okay. What we’ll do is just figure it on minimum wage and impute minimum wage to him and nothing for her and get it set up that way.” The mother then testified that the child was on Medicaid, to which the trial court responded that the father would have to be responsible for any medical expenses not covered by Medicaid. The trial court subsequently entered a written judgment to that effect on September 9, 2009, setting the father’s monthly child-support obligation at $232.50, purportedly pursuant to Rule 32, Ala. R. Jud. Admin.
The father subsequently filed a motion to alter, amend, or vacate the judgment pursuant to Rule 59, Ala. R. Civ. P., in which he asserted that the trial court had erred in ordering him to pay child support ■without any evidence to support the $232.50 award and in light of the fact that the father was “presently incarcerated in the Alabama Dept, of Corrections with multiple life sentences” and that the father “will have no means or opportunity for gainful employment to obtain an income in the foreseeable future.” The trial court denied that motion, and the father timely appealed.
On appeal, the father argues that the trial court exceeded its discretion by imputing income to him even though he is incarcerated and by not receiving into evidence the required child-support-guideline forms and income statements. Because I believe the father is correct as to the first issue, I believe the second issue is moot.
Rule 32, Ala. R. Jud. Admin., governs the calculation of child support. Derie v. Derie, 689 So.2d 142, 144 (Ala.Civ.App.1996). Rule 32(B)(1), Ala. R. Jud. Admin., defines “income” as the “actual gross income of a parent, if the parent is employed to full capacity, or the actual gross income the parent has the ability to earn if the parent is unemployed or underemployed.” Rule 32(B)(5), Ala. R. Jud. Admin., provides, in pertinent part:
“If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income. In determining the amount of income to be imputed to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of that parent, based on that parent’s recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community.”
Pursuant to those provisions, a court shall impute income to a parent upon a determination, express or implied, that the parent is voluntarily unemployed. T.L.D. v. C.G., 849 So.2d 200, 206 (Ala.Civ.App.2002).
In imputing minimum-wage income to the father, the trial court impliedly found that the father was capable of obtaining and performing employment at such a wage level but that he was voluntarily electing not to do so. However, the only relevant evidence in the record shows that the father is incarcerated, is serving a 150-year sentence, and is not expected to be released from prison. That evidence suggests that the father cannot obtain employment at any wage level because he is involuntarily restrained.[5]
*929 In Alred v. Alred, 678 So.2d 1144, 1146 (Ala.Civ.App.1996), this court stated:
“The fact that the father is in prison and unemployed is a matter for consideration in determining his ability to pay. Grogan v. Grogan, 608 So.2d 397 (Ala.Civ.App.1992). If the father nevertheless has property or funds available to him, support may be ordered therefrom. Smith v. Smith, 631 So.2d 252 (Ala.Civ.App.1993).”
(Emphasis added.) As I read Aired, which was issued almost 9 years after the adoption of Rule 32, Ala. R. Jud. Admin., on October 1, 1987, a court must consider that incarceration prevents a parent from earning wages but may nevertheless award child support from other income or assets of the incarcerated parent. Applying Aired, the trial court could not have lawfully imputed income to the father on the theory that the father was voluntarily unemployed due to the commitment of the criminal actions that led to his incarceration.[6]
To characterize unemployment traceable to incarceration as voluntary unemployment, this court would have to overrule Aired. Finding no compelling reason to do so, I believe the court should continue to follow that precedent. Because the majority has treated the issue as one of first impression and has adopted a rule contrary to Aired, I respectfully dissent from the rationale employed by the majority. Nevertheless, for the reasons expressed in this special writing, I concur in the result to reverse the trial court’s judgment.

. Section 14-8-2, Ala.Code 1975, authorizes the Alabama Department of Corrections to promulgate regulations allowing for minimum-security prisoners to participate in paid employment. The Department of Corrections has created a work-release program for se *929 lected inmates as a means of "preparing [inmates] for release" and "to aid [inmates] in making the transition from a structured institutional environment[ ] back into the community.” See Department of Corrections’ Admin. Reg. No. 410.I.A. Because the father is not expected to be released back into the community and is serving a 150-year sentence, it appears that he is not eligible for paid employment under § 14-8-2.

. The main opinion suggests that the father has some other assets or income from which to pay child support or, at least, that the father failed to prove that he did not have some other means of paying child support. 54 So.3d at 925. However, the trial court did not award child support from any other source other than the imputed wages of the father, probably because the trial court had already granted the father indigent status based on the father’s affidavit, which indicated the father had no other assets or income from which to pay child support. At any rate, any discussion of the possibility that the father may have had some other means of payment is misplaced based on the record before us. I note, however, that there is no evidence in the record from which the trial court could have determined that the father has assets or other income from which he could pay child support.