**Deanna L. EWING, Appellee,**

v.

**Joshua M. EWING, Sr., Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2003.
Filed Feb. 27, 2004.

Marc S. Drier, Jersey Shore, for appellant.

Christina L. Dinges, Williamsport, for appellee.

Before: TODD, BENDER and BECK, JJ.

BECK, J.

¶ 1 This case concerns the calculation of income available for support where a parent is terminated from his job and is successful in seeking unemployment compensation. The precise question is whether the trial court is bound by the Unemployment Compensation Bureau's (the Bureau) ruling that the parent was not fired for cause. We conclude that the trial court is not bound by the Bureau's ruling. Further, after careful consideration of all is-

sues raised in this case, we affirm in part, vacate in part and remand for further proceedings.

¶ 2 Joshua (Father) and Deanna (Mother) Ewing were married in 1989 and separated in 1995. A November 2000 order set Father's monthly support obligation for the couple's four children at $715.89. In addition, Father was required to pay $231.84 each month for child care costs Mother incurred as primary custodian. Father is remarried and has two children with his new wife.

¶ 3 In April of 2002, Father was terminated from his position as an operator at AT&T due to extensive absenteeism. He sought unemployment compensation and AT&T contested his right to benefits. The Bureau ultimately determined that Father had good cause for his last absence and was entitled to benefits. On May 1, 2002, Father filed a petition seeking a modification of his child support obligation based on changed circumstances. In support of this request, he noted his termination from AT&T and also asserted that Mother no longer had child care expenses. Mother too filed a petition for modification, seeking payment for the children's orthodontic treatment.

¶ 4 In August of 2002 and again in October that year, the parties appeared before a Support Hearing Officer. During those hearings, Father sought to establish that the requested decrease in his support obligation should reflect his current income, that is, the amount he received as unemployment compensation. In response, Mother asserted that Father was fired for cause and so should not be afforded a reduction in support.

¶ 5 Mother offered as a witness Mary Young, who was Father's supervisor at AT&T. Ms. Young testified that Father was terminated due to extensive absences from work. Within a twelve month period, Father was absent on eleven different occasions for a total of sixteen days. The last time Father was absent from work he sought leave under AT&T's Family and Medical Leave Absence (FMLA) program, but such leave ultimately was denied. Ms. Young testified that Father's FMLA request covered six days of absence in March of 2002, during which time he claimed he was sick with a fever. According to Ms. Young, Father's current wife, who also works for AT&T, was on vacation during the same period.

¶ 6 In an effort to establish that his March 2002 sickness was genuine, Father offered the testimony of Barbara Lorson, his physician's assistant, who explained that Father complained of a sore throat and fever and so was tested for strep throat by a nurse in the doctor's office. On cross-examination, Ms. Lorson conceded that Father's temperature was never taken by the nurse. Ms. Lorson also stated that the medical advice given to Father, which included staying home from work, taking over-the-counter medicines and getting plenty of rest, was communicated to Father in response to his own description of his symptoms and those described by his wife.[1]

¶ 7 Father also offered into evidence the Notice of Determination he received from the Bureau. The Notice set out specific findings of fact, including: 1) the amount of time that elapsed between the absenteeism and the date of discharge was 27 days; and 2) Father had good cause for his March 2002 absence. The discussion portion of the Notice explained:

---

1. Father's wife apparently called the doctor's office after the negative strep test to report that Father had laryngitis.

In situations where the Claimant is discharged for absenteeism, the burden is on the Employer to establish that the Claimant was absent, and that the Claimant was previously warned about work attendance. However, precedent court decisions have stated that the incident which causes the separation must be sufficiently related in time to the actual separation. In this case, the incident which caused the separation was not sufficiently related in time to the actual date of separation. As such, benefits must be allowed under Section 402(e).

Notice of Determination dated 5/15/02. AT&T did not appeal the Bureau's finding of Father's entitlement to benefits.

¶ 8 In addition to the testimony regarding Father's termination, the Support Hearing Officer heard testimony regarding Mother's employment history. Mother admitted that she was terminated from her position at Sabre Communications in May of 2001. After that time, she received unemployment compensation for an extended period; however, the benefits expired by the time of her second hearing. Mother testified that she was not seeking work and intended to stay at home to raise the couple's children.

¶ 9 After the hearing, the Support Hearing Officer recalculated the parties' income according to their unemployment compensation benefits and entered a temporary order. As a result, Father's child support obligation was reduced to reflect the reduction in his income. In addition, the Support Hearing Officer found that Mother failed to notify the Domestic Relations Office that she no longer had child care expenses once she was terminated from Sabre. The Hearing Officer vacated Father's child care contribution effective May, 2001, the date of Mother's termination.

¶ 10 Mother filed exceptions to the Support Hearing Officer's temporary order and the trial court heard argument on February 26, 2003. Primarily, Mother opposed the calculation of Father's income based on his unemployment compensation figures. She also claimed that vacating the child care contribution retroactive to May 2001 was improper. Finally, Mother challenged the calculation of her own income.

¶ 11 In resolving the exceptions, the trial court agreed with Mother that a reduction of Father's income was not warranted. It also found that the child care contribution should not have been vacated as of May 2001 and, further, that Mother's income was not properly calculated. The trial court recalculated the parties' incomes, changed the effective date vacating Father's child care contribution and set out a new child support obligation for Father, who then filed this appeal.

██ ¶ 12 On appeal, Father asserts that the trial court erred in 1) using his salary at AT&T as his "deemed income" for child support purposes, 2) reversing the Support Hearing Officer's decision to vacate Father's child care contribution as of the date child care expenses ceased, and 3) calculating Mother's income based on wages she received in prior jobs rather than her most recent position.

> In reviewing a support order, we are limited to considering whether, based on clear and convincing evidence, the trial court abused its discretion. "An abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality."

*Kersey v. Jefferson,* 791 A.2d 419, 422–23 (Pa.Super.2002) (citations omitted).

¶ 13 Father first claims that the court's use of his AT&T income, rather than his unemployment compensation, was a misapplication of the law. Although the Support Hearing Officer determined that Father's unemployment compensation was the proper gauge of his income available for child support, that finding is "only advisory and not in any way binding on the trial court." *Goodman v. Goodman*, 375 Pa.Super. 504, 544 A.2d 1033, 1035 (1988). Rather, it is the "sole province and the responsibility of the court to set an award of support" and even if the evidence before the Support Hearing Officer is adequate to support her recommendation, the trial court need not adopt it. *Id.*

¶ 14 The trial court relied on the applicable Rules of Civil Procedure to find that Father was not entitled to a reduction in support due to his termination from AT&T. The relevant rule states that "a party will ordinarily not be relieved of a support obligation by voluntarily quitting work or being fired for cause." Pa.R.Civ. P.1910.16–2(d)(1). The trial court essentially determined that Father was fired for cause, despite a finding by the Bureau that he was entitled to benefits. On appeal, Father argues that the Bureau's finding "made in a contested proceeding and not appealed further, is *res judicata* ... and preclude[s] the court from finding otherwise." Appellant's Brief at 12.

 ¶ 15 Although he used the term *res judicata*, it appears that Father is arguing the principle of "collateral estoppel" or "issue preclusion" in that he claims the trial court in a subsequent proceeding is precluded from reaching a decision other than the one reached by the Bureau in a prior proceeding. However, in order for collateral estoppel to apply, Father must meet four distinct requirements, namely: The issue decided in a prior action must be identical to one presented in a later action; the prior action must have resulted in a

final judgment on the merits; the party against whom collateral estoppel is asserted must have been a party to the prior action, or in privity with a party to the prior action; and the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior action. *Shaffer v. Smith*, 543 Pa. 526, 673 A.2d 872 (1996).

¶ 16 Although prongs one and two are arguably met under these facts, there has been no satisfaction of the remaining requirements. Mother was not a party to the unemployment compensation proceedings, nor was she in privity with a party to those proceedings. As a result, she had no opportunity to litigate the issue of termination for cause before the Bureau. For these reasons alone, the trial court was not precluded from assessing for itself whether Father was fired for cause.

¶ 17 Father argues that the Rule's use of the phrase "fired for cause" can only mean that the court *must* adopt the Bureau's finding, as the phrase "cannot have any context other than the law of employer-employee termination." Appellant's Brief at 10. In essence, Father is claiming that by using the phrase in the Rule, our supreme court intended the domestic relations court to be bound by the Bureau's findings with respect to termination for cause. We cannot agree.

¶ 18 In *Rue v. K–Mart Corporation*, 552 Pa. 13, 713 A.2d 82 (1998), an employer/defendant in a defamation case sought to offer evidence that it fired an employee for cause (theft) even though the Bureau had previously determined that there was no cause and the employee was entitled to unemployment compensation benefits. The employee opposed the employer's attempts to prove the theft at the defamation trial and asserted that the Bureau's prior finding was binding on the court. The Pennsylvania Supreme Court ruled

that the employer was entitled to offer evidence that it had a valid basis for the employee's termination. In doing so, the court recognized the significant difference between unemployment compensation proceedings and other civil actions, in both the purposes they serve and the manner in which they are conducted:

The substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a [Bureau] Referee's factual findings.

*Id.* at 20–21, 713 A.2d at 86.

¶ 19 The *Rue* court held that the Bureau's finding had no preclusive effect and so the factual issues underlying the termination could be litigated in the civil action.

¶ 20 Based on *Rue*, we cannot conclude that Rule 1910.16–2 requires the domestic relations court to adopt wholesale the findings of the Bureau with respect to terminations for cause. Instead, *Rue* confirms the Supreme Court's recognition that Bureau decisions and the factual findings in support thereof are not necessarily reliable in a subsequent civil action and have no preclusive effect in those later proceedings.

¶ 21 The question for us then is whether the trial court here correctly determined that Father was fired for cause, thereby triggering application of Rule 1910.16–2(d)(1).

¶ 22 Upon review of the record, we find no abuse of discretion in the trial court's conclusion. The evidence established that Father was fired for excessive absences over a period of one year. He was out of work on 11 different occasions for a total of 16 days. His last absence lasted six days and his employer denied him FMLA coverage for that period. Although Father claimed to be sick during that time, the medical testimony he offered did not establish independent proof that he was suffering from an illness; it merely established he complained of feeling ill. In addition, the period of time that he claimed to be sick coincided with his wife's vacation. The Bureau's conclusion that Father was entitled to unemployment compensation was based in large part on the timing of AT&T's termination and, in any event, the Bureau's determination was not controlling. In light of all the evidence presented, we find no abuse of discretion in the court's resolution of the matter.

¶ 23 Because the trial court found that Father was fired for cause, it turned to Pa.R.Civ.P.1910.16–2(d)(1) to determine whether a reduction in support was warranted. Unfortunately, the trial court did not analyze the Rule 1910.16 issue; it merely concluded that termination for cause *automatically* prevented Father from getting a reduction in support. But our courts have not interpreted Rule 1910.16–2(d)(1) in such a rigid manner. Recently, our supreme court observed the standard to be applied when making an inquiry under the Rule:

In Pennsylvania, "[w]here a party voluntarily assumes a lower paying job, there generally will be no effect on the support obligation," and "[a] party will ordinarily not be relieved of a support obligation by voluntarily quitting work or being fired for cause." Pa.R.C.P. No.1910.16–2(d)(1). In construing this rule, the Superior Court has required that a party seeking modification after a voluntary reduction in income show (1) that the change was not made for the purpose of avoiding child support, and (2) that reduction is warranted based on the party's efforts to mitigate the lost income. *See Grimes v. Grimes,* 408 Pa.Super. 158, 596 A.2d 240, 242 (1991); *see also Kersey v. Jefferson,* 791 A.2d 419 (Pa.Super.2002). Otherwise, for calculation of a support obligation, the petitioner will be considered to have an income equal to his or her earning ca-

pacity as defined in the support guidelines." *Grimes,* 596 A.2d at 242.

*Yerkes v. Yerkes,* 573 Pa. 294, 824 A.2d 1169, 1176 n. 10 (2003).

¶ 24 The *Yerkes* court had before it a petition for modification/termination of support based on a parent's confinement in prison. The court reasoned that the incarceration of a parent was akin to voluntary unemployment. Even though the *Yerkes* court noted this court's use of a two-part inquiry in assessing Rule 1910.16–2, it did not analyze the prongs individually, but instead determined that incarceration alone is not grounds for modification/termination of a support order. *Id.* at 307, 824 A.2d at 1177.

¶ 25 That the *Yerkes* court noted, but did not apply, the two-prong test for Rule 1910.16–2 was sensible in light of the facts of that case. First, the idea that the father in *Yerkes* committed a crime and went to prison in order to avoid child support, though possible, was highly unlikely. Second, the father's incarceration prevented him from attempting to mitigate his lost income by seeking employment elsewhere. From *Yerkes,* we can infer that the two pronged analysis is appropriate only where the facts give rise to such an examination.

¶ 26 The facts of this case are akin to *Yerkes* in that Father's lost income here was a result of his own misconduct. Further, the notion that Father engineered his termination from AT&T in an effort to avoid his child support obligation strains belief. Mother made no such claim in the trial court or in her brief and the record offers no support for such an inference. But the analogy of *Yerkes* is not complete. Unlike in *Yerkes,* Father here indeed has the opportunity to mitigate his lost income and, we believe, should be required to do so. Thus, although prong one is irrelevant under these facts, prong two is not.

 ¶ 27 We hold today that where a parent is fired for cause, in order for the court to consider reducing the parent's child support obligation under Rule 1910.16–2(d)(1), the parent must establish that he or she attempted to mitigate lost income. *See Grimes, supra* and *Kersey, supra.*

¶ 28 The record in this case shows that Father testified about his efforts to mitigate his lost income following his termination. According to Father, he applied for and received unemployment compensation, he filed an arbitration petition through his union to challenge his discharge and seek reinstatement, and he sought other employment as well. Father named some of the companies and facilities to which he had applied for work and he testified that he had two interviews scheduled for the date of the hearing. In addition, he stated that he was scheduled to take the civil service exam the following week.

¶ 29 The trial court did not consider this mitigation testimony in the context of Rule 1910.16–2(d)(1); rather, the court believed that because Father was fired for cause, a reduction in support was not warranted. In light of our analysis above, we cannot agree with the trial court that Father's termination, despite being for cause, precludes him from receiving a reduction in his child support obligation. A reduction in child support may be warranted in this case and the trial court abused its discretion in failing to consider mitigation. Thus, this matter must be remanded for further proceedings to address whether and to what extent Father has established mitigation. The trial court must determine whether Father has acted responsibly since he lost his job, even though his own irresponsible conduct prompted his termination.[2]

---

2. We note that the trial court also determined, with little explanation, that Father willfully

failed to obtain appropriate employment, thus

¶ 30 We turn next to Father's claim that the trial court erred in rejecting the Support Hearing Officer's recommendation that his child care contribution be vacated as of the date Mother's child care expenses ceased. The record establishes that as of November 2000, Father's child care contribution was set at $231.84 and was part of a wage attachment order.

¶ 31 Both parties were under a court ordered obligation to notify the Domestic Relations Office in writing of any change in circumstances relevant to the level of support within seven days of the change. Mother was terminated from her job in May of 2001 and at that time she no longer required child care. She never returned to work and does not intend to do so, choosing instead to stay at home to care for the children.

¶ 32 The Support Hearing Officer determined that Father was entitled to a credit for the child care contribution amounts paid after May of 2001 and vacated the child care contribution as of that date. But the trial court disagreed with the Support Hearing Officer's assessment of the issue. It vacated Father's child care contribution, but only as of May 2002, the date Father filed his petition for modification. The court reasoned that Father failed to "present evidence that he was prevented from filing ... a Petition [requesting that the child care contribution be vacated] any sooner than he actually did." Trial Court Opinion, 3/6/03, at 3. The trial court also concluded that the Support Hearing Officer's May 2001 date was unwarranted because Father presented no evidence that Mother failed to satisfy the notification

prompting an assessment of earning capacity in lieu of his actual earnings. *See* Pa.R.Civ.P. 1910.16–2(d)(4). We find that the record is insufficient to reach such a conclusion. As our discussion above indicates, Father testified that he was seeking reinstatement of his former job and also seeking employment else-

provision at issue. Trial Court Opinion, 5/26/03, at 2.

¶ 33 "[A]n order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise ... and so [c]onsequently, modification of a support Order is to be retroactive to the date when modification initially was sought unless the court sets forth reasons for failing to do so on the record." *Kelleher v. Bush,* 832 A.2d 483, 485 (Pa.Super.2003) (citations omitted). The *Kelleher* court held that the trial judge in that case erred in making a modification order retroactive to a date prior to the date the petition for modification was filed. In *Kelleher,* the father was paying in accordance with a support order and the mother sought modification. The court granted the mother's request for modification, but made the effective date of modification eight months prior to the date of the petition. This court ruled that such retroactivity was improper and that the Rule could not be interpreted to allow retroactivity prior to the date of filing. The court held:

> In sum, there is simply no legal precedent or legitimate reason to expand the policy of retroactivity articulated in Rule 1910.17(a). As such, the new support Order cannot be effective any earlier than ... the filing date of the modification petition.

*Id.* at 486.

¶ 34 We note that since Father is seeking to modify the order, he has the burden of proof. Father advances no legitimate reasons for modifying the order prior to the date the petition was filed. Although

where. The trial court's summary conclusion that Rule 1910.16–2(d)(4) applied here is simply not supported by the record. Upon remand, the parties and the court may probe Father's post-termination conduct in the context of Rule 1910.16–2(d)(4).

it is clear that Mother was terminated in May 2001, Father never questioned her at the hearing about whether she notified the Domestic Relations Office nor did he assert that he was unaware Mother left her job until May of 2002. The lapse of time between the date Mother was terminated and the date Father sought modification is a full year; Father offers no explanation for this time lag.

¶ 35 Upon review of the record, we conclude that the trial court did not abuse its discretion in setting the date for vacating the child care contribution at May 2002, the date the petition was filed. The trial court followed established law in setting the date and Father offered no evidence that a different (prior) date was appropriate in this particular case.

■ ¶ 36· Father's last claim of error is that the trial court's calculation of Mother's earning capacity was improper. Father claims that the court should have held Mother to an earning capacity equal to her salary at Sabre. The trial court, relying on testimony of record, determined that a lesser earning capacity was appropriate. The court explained:

> By way of background, [Mother] had last worked in a job from which she had been laid off and had not worked for over a year since. She was assessed an earning capacity but the capacity was based on employment held prior to her last job as it was found that her income at her last job was not representative of her previous employment and educational history. It was also noted in assessing the earning capacity that [Mother] had been laid off from her employment, rather than having been fired for cause or having voluntarily left such employment. Considering all of the circum-

stances, the Court believes the earning capacity assessed was appropriate.

Trial Court Opinion, 5/26/03, at 2.

¶ 37 In light of the record and our standard of review, we cannot find an abuse of discretion in this instance. There was adequate evidence of record to establish that Mother was unlikely to find a position that paid her a salary commensurate with her wages at Sabre. Although Father challenges the trial court's reduction in her income calculation from $18,000.00 to $14,040.00, the record supports the trial court's determination. Mother's work history militated in favor of setting her income at the lower amount.

¶ 38 We conclude that the trial court was not bound by the Unemployment Compensation Bureau's determination and further find that the court's conclusion that Father was fired for cause does not constitute an abuse of discretion. However, we conclude that the trial court abused its discretion by failing to consider whether Father's post-termination efforts at mitigating his lost income warranted a reduction in support.

¶ 39 We also find that the trial court did not abuse its discretion when it vacated Father's child care contribution as· of May 2002. Finally, we determine that the trial court· did not abuse its discretion when it assessed Mother's earning capacity at $14,040.00.

¶ 40 Order affirmed in part and vacated in part. Matter remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.