J-A18025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AUDREY F. RASMUSSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RANDALL L. RASMUSSON | : | |
| | : | |
| Appellant | : | No. 728 WDA 2020 |

Appeal from the Order Entered March 13, 2020
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 99-004501, PACSES #: 342101320

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: MAY 10, 2022**

Appellant Randall L. Rasmusson (Father) appeals from the order dismissing his exceptions to the hearing officer's report and recommendation regarding child support and adopting that report and recommendation as a final order.[1]  This case returns to us after we remanded it to the trial court for preparation of a supplemental opinion.  We affirm.

The trial court summarized the factual and procedural history as follows:

Mother is a licensed attorney and is employed with [the] Allegheny County Law Library.  She works full time and her net income is $3,064.82 per month.  Father is a faculty member of the medical school at the University of Rochester.  He is also involved with several medical research companies.  His net income is

_____

[1] Appellee Audrey F. Rasmusson (Mother) filed cross-exceptions to the hearing officer's report and recommendation.  The trial court's March 13, 2020 order also denied Mother's cross-exceptions.  Mother did not file an appeal.

$10,148.03 per month. The parties are the parents of two adult children, a son and a daughter. Mother requests support for the parties' daughter (Daughter) beyond the normal age of emancipation due to the Daughter's diagnosis of autistic syndrome disorder (ASD).[2]

Beginning in 2012, the parties entered into a private support agreement. Under that agreement, Father paid $1,250.00 per month into a trust until Daughter's twenty-first birthday. [The parties' 2012 agreement was later incorporated into an April 17, 2017 consent order.] At the agreement's conclusion the parties entered litigation and Mother ultimately filed the complaint for support at issue on September 6, 2018. The matter was designated as complex and, after extensive discovery including a deposition [of Mother], a hearing took place over July 23, October 10, and October 28, 2019. Both parties were represented by counsel and the hearing included the testimony of both parents, their Daughter, and Mother's expert witness, John Carosso, PsyD (Dr. Carosso). At the hearing's conclusion, the hearing officer recommended that the long-standing agreement continue and directed Father to pay $1,250.00 per month into a trust to preserve the Daughter's SSI benefits. [The hearing officer also recommended that the order be retroactive to the date Mother filed the complaint, assessed support arrears against Father in the amount of $18,527.40, payable to Mother at a rate of $200.00 per month. The hearing officer recommended that the trial court's final order not be a PACSES[3] order and closing this case on PACSES.]

On December 13, 2019, Father filed a total of 20 exceptions to the hearing officer's report and recommendation. After argument, Father's exceptions were dismissed, and this court adopted the recommendation as a final order of court [on March 13, 2020].

Trial Ct. Op., 1/19/22, at 1-2 (some formatting altered).

_____

[2] John Carosso, PsyD diagnosed Daughter with ASD in 2006 when Daughter was nine years old.

[3] PACSES is an acronym for the Pennsylvania Child Support Enforcement System.

On July 20, 2020, Father filed a notice of appeal from the trial court's March 13, 2020 order.[4]  The trial court did not order Father to file a statement of issues raised on appeal pursuant to Pa.R.A.P. 1925(b).  The trial court issued an opinion pursuant to Rule 1925(a) concluding that the appeals were untimely, and requesting that this Court dismiss Father's appeals.  *See* Trial Ct. Op., 2/26/21, at 1-3 (unpaginated).

This Court concluded that Father's July 20, 2020 notice of appeal was timely filed because there had been a breakdown in the trial court's operations.  *See Rasmusson v. Rasmusson*, Nos. 728 WDA 2020, 904 WDA 2020, 2021 WL 4281306 at *3 (Pa. Super. filed Sept. 21, 2021) (unpublished mem.).  This Court then remanded this case for the trial court to prepare a supplemental Rule 1925(a) opinion addressing the merits of Father's issues.[5]  *See id.*, 2021 WL 4281306 at *4.  On January 19, 2022, the trial court issued a supplemental opinion addressing Father's claims.  Trial Ct. Op., 1/19/22, at 2-9.

_____

[4] This Court docketed this appeal at 728 WDA 2020.  That same day, Father also filed an emergency motion to appeal *nunc pro tunc*.  The trial court issued an order denying Father's emergency motion on July 23, 2020, which was docketed on August 24, 2020.  On August 24, 2020, Father filed a notice of appeal from the trial court's order denying his emergency motion to appeal *nunc pro tunc*, and this Court docketed that second appeal at 904 WDA 2020.

[5] Because we concluded that Father's appeal at 728 WDA 2020 was timely filed, we dismissed Father's appeal at 904 WDA 2020 as moot.  *Rasmusson*, 2021 WL 4281306 at *4.  Therefore, the sixth issue Father raises in his brief, whether the trial court erred in denying Father's motion to file appeal *nunc pro tunc*, is moot.  *See* Father's Brief at 8, 36-40.

Father raises five issues for our review, which we reorder as follows:

1. Whether the trial court erred by not applying the principles of estoppel to [Mother's] support complaint.

2. Whether the trial court erred in finding [Mother] met her burden of proof that the child is not emancipated, not capable of supporting herself, or that the child is mentally disabled.

3. Whether the trial court erred in giving significant weight to expert testimony.

4. Whether the trial court erred in failing to apply the Pennsylvania child support guidelines.

5. Whether the trial court erred in making [Father's] arrears balance, arrears payment, and support payment non-modifiable by closing the case on PACSES and declaring the order as a non-PACSES order.

Father's Brief at 7-8 (formatting altered).

In reviewing Father's appeal, our standard of review is as follows:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

**Summers v. Summers**, 35 A.3d 786, 788 (Pa. Super. 2012) (citation omitted).

The "credibility to be assigned the parties' testimony and supporting exhibits lies initially with the hearing officer and the trial court." **Sirio v. Sirio**, 951 A.2d 1188, 1195 (Pa. Super. 2008) (citation omitted). This Court has

explained the findings of a child support hearing officer are "only advisory and not in any way binding on the trial court." ***Ewing v. Ewing***, 843 A.2d 1282, 1286 (Pa. Super. 2004) (citation omitted). "Rather, it is the sole province and the responsibility of the [trial] court to set an award of support and even if the evidence before the support hearing officer is adequate to support [his or] her recommendation, the trial court need not adopt it." ***Id.*** (citation omitted and formatting altered); ***see also Sirio***, 951 A.2d at 1196 ("the trial court is obligated to conduct a complete and independent review of the evidence when ruling on exceptions" (citation omitted)). Further, this Court, as "a reviewing court does not weigh the evidence or determine credibility as these are functions of the trial court." ***Doherty v. Doherty***, 859 A.2d 811, 812 (Pa. Super. 2004).

## Estoppel

Father argues that the trial court erred by failing to apply the principles of estoppel to Mother's September 6, 2018 complaint for support. Father's Brief at 31. Father notes that in 2017, the parties entered into a consent order fixing the amount of support Father was required to pay and setting a termination date for the support payments. ***Id.***; ***see also*** R.R. at 5a (consent order).[6] Father contends that he detrimentally relied on Mother's

---

[6] We may cite to the reproduced record for the parties' convenience. We note that the notes of testimony from the July 23, 2019 and October 10, 2019 hearings are not included as part of the certified record, but they are included as part of the reproduced record. Mother did not object to the accuracy of

representations as to the termination date for the support payments, and that he would not have agreed to the consent order if he knew Mother would seek additional support after that date. Father's Brief at 31. Father concludes that Mother should be estopped from seeking additional child support. ***Id.*** (citing, *inter alia*, ***Style v. Shaub***, 955 A.2d 403, 408 (Pa. Super. 2008)).

In ***Style***, this Court addressed the trial court's holding that the mother was estopped from filing another support complaint as follows:

> [W]e do not agree with the trial court that [the mother] was estopped from filing a new request for support. Without determining the applicability of the doctrine of equitable estoppel generally to issues of child support like the one presented here, it is clear that under the law of Pennsylvania, a finding of estoppel must be based upon a demonstration of detrimental reliance by the party asserting the doctrine. Here [the father] offered no evidence to show any detrimental reliance on his part to the termination of the original (pre-majority) child support order.

***Style***, 955 A.2d at 408 (citation omitted).

Here, in concluding that Mother was not estopped from filing the instant support complaint, the trial court explained:

> Like [the father in ***Style***], Father similarly provides no evidence of the type of detrimental reliance that would fully preclude Mother from filing a support action after the termination of their prior arrangement. Instead, the July 1, 2018 termination date was the logical date to use as it would also have been the date a support action was administratively terminated due to the child ageing out of the public school system. Had there been no termination date, and thus no agreement, Mother likely would have filed her

these notes of testimony. Because "their veracity is not in dispute, we rely on the copy contained within the reproduced record." ***See C.L. v. M.P.***, 255 A.3d 514, 519 n.3 (Pa. Super. 2021) (*en banc*).

- 6 -

complaint in support much sooner resulting in a similar course of events. Father benefited from the consent order by avoiding the need for additional hearings and counsel fees during that period of time. Finding no evidence of detrimental reliance, this Court concluded Mother was not barred from filing her complaint in support by the principles of estoppel.

Trial Ct. Op., 1/19/22, at 6 (formatting altered).

Based on our review of the record, we agree with the trial court's conclusion. Father testified during the support hearing that he agreed to pay support into a trust until two months after Daughter's twenty-first birthday. R.R. at 501a. However, Father did not present any evidence that he relied on Mother's representations that she would not seek additional child support after Daughter's twenty-first birthday when Father agreed to the consent order. As in **_Style_**, even if we were to conclude that equitable estoppel principles applied, Father could not invoke that doctrine because he has failed to establish any detrimental reliance on his part. **_See Style_**, 955 A.2d at 408. Therefore, Father is not entitled to relief on this claim.

### Daughter's Disability

Father's next two issues relate to the trial court's[7] determination that Daughter is disabled, and thus entitled to support past the age of emancipation. Therefore, we address these issues together.

---

[7] Throughout his brief Father refers to the hearing officer's alleged errors. Father's Brief at 27-36. However, because the hearing officer's conclusions are only advisory, and the trial court may reach its own conclusions, we refer to the trial court in our summary of Father's arguments. **_See Ewing_**, 843 A.2d at 1286.

Father argues that Mother failed to rebut the presumption that Father's duty to support Daughter ended when she reached her majority. Father's Brief at 23-26. As noted previously, Dr. Carosso diagnosed Daughter with ASD (autism) in 2006. Father does not dispute that Daughter has been diagnosed with autism, among other conditions. *Id.* at 26. Instead, Father claims that Mother did not present sufficient evidence to establish that Daughter "is not capable of supporting herself or that she is mentally disabled." *Id.* at 23. Specifically, Father notes that "Dr. Carosso did not indicate any physical limitation existed that would interfere with [Daughter's] ability to work, and Mother provided no expert testimony or medical records to support her testimony [Daughter] has physical limitations." *Id.* Therefore, Father concludes that Mother's evidence did not establish that it would be impossible for Daughter to maintain employment due to her ASD diagnosis. *Id.* at 24-26 (citing, *inter alia*, **Style**, 955 A.2d at 406).

Father also argues that the trial court erred by giving too much weight to the testimony of Mother's expert, Dr. Carosso. *Id.* at 33-36. Father acknowledges that it is the province of the fact finder to determine the credibility of witnesses but contends that trial court should have considered "the method by which the expert reached his . . . conclusion as all the components that the expert considered" in weighing Dr. Carosso's testimony. *Id*. at 33-34 (citation omitted and formatting altered). Father further contends that Dr. Carosso was not qualified to render an opinion about Daughter's ability to work because Dr. Carosso "admit[ed] he is not an

employment consultant and has no training as a skills or job evaluator[,]" and he did not administer tests to evaluate Daughter's ability to work. *Id.* at 35 (citing R.R. at 206a, 216a, 222a). Father observes that Dr. Carosso did not consult with Daughter's treating psychiatrist or her former employers before reaching his conclusion. *Id.* (citing R.R. at 211a, 215a).

This Court has explained:

In Pennsylvania, the duty to support a child generally ceases when the child reaches the age of majority, which is defined as either eighteen years of age or when the child graduates from high school, whichever comes later. 23 [Pa.C.S.] § 4321(3), however, provides that parents may be liable for the support of their children who are 18 years of age or older. In applying section 4321(3), this Court has found that there is a presumption that the duty to support a child ends when the child reaches majority:

> Ordinarily a parent is not required to support his adult child but there is a well recognized exception supported by abundant authority that where such child is too feeble physically or mentally to support itself the duty on the parent continues after the child has attained its majority.

This presumption is not rebuttable if the child becomes disabled only **after** reaching the age of majority. The public policy behind such rationale is apparent, as there must be a logical end point to a parent's obligation to support his or her child. Otherwise, an adult child could theoretically sue their elderly parents for support after sustaining a debilitating injury well after reaching the age of majority.

When the disability resulting in the child's inability to be self-sufficient already exists at the time the child reaches the age of majority, however, the presumption is rebuttable by the adult child upon proof that there are conditions that make it impossible for her or him to be employed. . . .

\* \* \*

To rebut the presumption that a parent has no obligation to support an adult child, the test is whether the child is physically

and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage. The adult child has the burden of proof on these issues. Our scope of review is limited to a determination of whether the trial court committed an abuse of discretion or an error of law when making a determination in this regard.

*Style*, 955 A.2d at 408-09 (some citations omitted and formatting altered) (emphasis in original); *see also Crawford v. Crawford*, 633 A.2d 155, 160 (Pa. Super. 1993) (affirming the trial court's conclusion that the parties' adult child was incapable of self-support because of a genetic mental disorder and cerebral palsy).

Here, the trial court explained:

[T]his court is persuaded by the expert provided for the hearing. Dr. Carosso assessed his subject's ability to socially engage and found notable problems consistent with her autism diagnosis. He also found deficiencies with her ability to adapt to her environment and meet the demands of society. "She has a really hard time adapting to the world and controlling her impulses and emotions and things of that nature." Furthermore, Dr. Carosso explained:

She tends to be socially inappropriate. She doesn't know how to respond to certain social situations and will make noise or express emotion or feelings that are not appropriate or applicable to the situation. . . . People don't really tolerate that particularly well.

Dr. Carosso concluded that [Daughter] was not capable of engaging in ongoing profitable employment.

This court also found Mother's testimony regarding her daughter's employability to be credible. Mother explained that even slow, simple, and repetitive employment would be difficult for her daughter. Therefore, the undersigned found no error in the Hearing Officer's determination that Mother met her burden and established that, at this time, her daughter is unemancipated because of a physical or mental condition and is unable to be self-supporting because of that condition.

- 10 -

\*     \*     \*

Father's final exception concerns the hearing officer's reliance upon the expert testimony of Dr. Carosso. Father finds fault with Dr. Carosso's qualifications and method. As previously stated, this court found no error in the hearing officer's determination that Mother met her burden and established that, at this time, her daughter is unable to be self-supporting. This [c]ourt also found the hearing officer's reliance upon Dr. Carosso's testimony in making that determination to be reasonable. Without repeating his entire curriculum vitae, Dr. Carosso holds two master's degrees and a doctorate. At the hearing on July 23, 2019, he was established as an expert in the field of child psychology. He also has experience in recommendations about a person's employability for the Office of Vocational Rehabilitation[.] He evaluated Daughter on two occasions, performed several assessments, and was able to render an opinion concerning her disability and employability within a reasonable degree of professional certainty[.] As such, this court was satisfied that the Hearing Officer gave Dr. Carosso's testimony the proper weight and consideration in determining that Father's support obligation to his Daughter should continue at this time.

Trial Ct. Op., 1/19/22, at 3-4, 8-9 (citations omitted and formatting altered).

Based on our review of the record, we agree with the trial court's conclusion that there was sufficient evidence to establish that Daughter is unable to engage in profitable employment due to her autistic syndrome disorder. **See Style**, 955 A.2d at 409.

As noted previously, Dr. Carosso testified that he first diagnosed Daughter with ASD in 2006 when she was nine years old. **See** R.R. at 183a-84a. After Daughter reached majority, Dr. Carosso conducted two additional evaluations and confirmed his original diagnosis of autism. **See id.** at 181a, 198a (Dr. Carosso evaluated Daughter on August 31, 2018 and May 14,

2019). Dr. Carosso also produced a report after each evaluation, which were admitted into evidence.[8] **See id.** at 181a-82a, 198-99a, 201a.

Dr. Carosso explained that he evaluated individuals for employability for both the Office of Vocational Rehabilitation and the Bureau of Disability Determination for ten years. **See id.** at 206a, 217a. Dr. Carosso testified that, in his opinion, Daughter's autistic syndrome disorder has impaired her ability to earn a living wage. **See id.** at 191a-99a, 207a-08a. Additionally, Mother testified about the reminders and assistance that Daughter requires in order to perform everyday activities. **See id.** at 252a, 311a, 314a-15a, 317a-22a, 328a-30a. Mother stated that she believed that Daughter would have difficulty performing slow, simple, and repetitive tasks in the workplace. **See id.** at 389a-90a.

As for Father's claim that the trial court erred by giving too much weigh to Dr. Carosso's testimony, we note that it is the responsibility of the trial court to weigh the testimony and supporting exhibits. **See Sirio**, 951 A.2d at 1195. We will not usurp the role of the trial court as fact finder by re-weighing the evidence on appeal. **See Doherty**, 859 A.2d at 812.

Finally, to the extent Father argues that Dr. Carosso was not qualified to render an expert opinion about Daughter's ability to work, that argument

---

[8] Copies of Dr. Carosso's reports were not included in the certified record. **See In re O'Brien**, 898 A.2d 1075, 1082 (Pa. Super. 2006) (stating "[i]t is an appellant's duty to insure [sic] that the certified record contains all documents necessary for appellate review" (citation and footnote omitted)).

is waived. Father did not include this issue in his statement of questions involved and has not developed it with citations to pertinent legal authority. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); *In re C.R.*, 113 A.3d 328, 335-36 (Pa. Super. 2015) (holding that the failure to develop argument with citation to pertinent authorities results in waiver); *see also* Pa.R.A.P. 2119(a).[9]

In sum, we conclude that Dr. Carosso's testimony is sufficient to sustain the support order, and therefore, Father is not entitled to relief on these claims. *See Summers*, 35 A.3d at 788 (stating that "this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground" (citation omitted)); *Style,* 955 A.2d at 408-09.

---

[9] Even if Father had not waived this issue, we agree with the trial court that Dr. Carosso was qualified to testify about Daughter's ability to work. *See* Trial Ct. Op., 1/19/22, at 8-9. Dr. Carosso diagnosed Daughter with autism when she was nine years old, evaluated her twice prior to the hearing, and has ten years of experience performing evaluations for the Office of Vocational Rehabilitation and the Bureau of Disability Determination. *See generally In re K.C.F.*, 928 A.2d 1046, 1050 (Pa. Super. 2007) (explaining that "the standard for qualification of an expert witness is a liberal one" and a witness may be qualified as an expert if the witness "possess[es] more expertise than is within the ordinary range of training, knowledge, intelligence, or experience" (citations omitted and formatting altered)). Further, Father's challenge to Dr. Carosso's qualifications based on his failure to consult with Daughter's treating psychiatrist is meritless. *See id.* at 1051 (holding that an expert witness's "initial qualification as an expert is not affected by the substance of his subsequent testimony" (citation omitted)).

**Support Guidelines**

Father next argues that the trial court erred calculating the guideline support amount. Father's Brief at 27-30. Father asserts the trial court made three errors. First, Father contends that the trial court erroneously calculated Father's gross income with respect to his salary and income from dividends and real estate. *Id.* at 28. Specifically, Father argues that the trial court found that Father "earned $154,183.00 as a professor" despite Father producing a 2018 W-2 indicating his salary was $152,691. *Id.* at 28 (citing R.R. at 417a-24a). Father also asserts that the trial court's final calculation of an annual gross income of $172,199 is not supported by the record, because no evidence was presented that Father received income from dividends and it is unclear from the record how much income from real estate the trial court attributed to Father. *Id.*

Second, Father argues that the trial court failed to deem Mother's period of working part time as a voluntary reduction in income and the trial court should have imputed a full-time earning capacity to Mother during that time period. *Id.* at 28-29 (citing Pa.R.C.P. 1910.16-2(d)(1)). Father contends that although Mother testified at her deposition that she took a part-time position for medical reasons, she did not provide supporting documentation about her medical condition. *Id.* at 29. Father also asserts that Mother's claim that she could not work full time is undermined by the fact that Mother accepted a full-time position in October 2019. *Id.*

Lastly, Father argues the trial court erred by failing to deviate from the support guidelines because Mother received monthly gifts of $3,000 from her mother. *Id.* at 29-30.

When reviewing a support order, this Court has explained:

> The starting point for calculation of a parent's child support obligation is a determination of each party's income available for support. The assessment of the full measure of a parent's income for the purposes of child support requires courts to determine ability to pay from all financial resources. Thus, when determining income available for child support, the court must consider all forms of income.

*Mencer v. Ruch*, 928 A.2d 294, 297 (Pa. Super. 2007) (citations omitted and formatting altered). A "court must make a thorough appraisal of the [obligor's] actual earnings and perquisites, and the true nature and extent of [the obligor's] property and financial resources." *Labar v. Labar*, 731 A.2d 1252, 1254 (Pa. 1999).

When a party voluntarily reduces his or her income by assuming a lower paying job, leaving employment, etc., that generally does not affect that party's support obligation. *See* Pa.R.C.P. 1910.16-2(d)(1). "Ordinarily, either party to a support action who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity." Pa.R.C.P. 1910.16-2(d)(4). "However, when a parent has not voluntarily reduced his income to circumvent his support obligation" the court "can consider reducing the parent's child support obligation." *Smedley v.*

- 15 -

*Lowman*, 2 A.3d 1226, 1228 (Pa. Super. 2010) (citation omitted and formatting altered).

Regarding gifts from family members, this Court has held that

a gift is not income for purposes of determining child support. Because a gift is given not in exchange for services, it does not meet the statutory definition of income. However, a gift **may** be considered as a reason for deviating from a guideline amount of child support.

*Suzanne D. v. Stephen W.*, 65 A.3d 965, 970 (Pa. Super. 2013) (citations omitted and emphasis added).

This Court has explained that when calculating income for support purposes:

First, there must be a calculation of what could be termed the real gross income, which is the total income from any source without consideration of any deductions. Secondly, the trial court must determine the monthly gross income pursuant to Pennsylvania Rule of Civil Procedure 1910.16-2(a). . . . Finally, the trial court must then determine the monthly net income pursuant to Rule 1910.16-2(c)(1). Rule 1910.16-2(c)(1) specifically provides for certain deductions from monthly gross income to arrive at net income, . . .

*Berry v. Berry*, 898 A.2d 1100, 1107 (Pa. Super. 2006).

Here the trial court explained that

Regarding his income, Father asserts his 2018 earnings were $152,691 but the hearing officer calculated his income as a professor to be $154,183 based upon "his tax information for 2018 and current paystubs." The court found this difference to be *de minims*. Father also takes issue with the hearing officer's calculation of his total gross income, including income from several corporations and real estate ventures. Again, the court found the hearing officer's calculation to be reasonable and in line with Father's testimony. The court again notes that the Father's

- 16 -

recommended support obligation was below the guideline amount calculated by the hearing officer and as such it finds no error with Father's gross earnings.

Turning to Mother's income, Father takes issue with the period of time prior to Mother's full-time employment at the Allegheny County Law Library. Mother asserts that this was due to health reasons. This court's review of the record found no evidence that would support a challenge to Mother's assertion. To the contrary, Father noted in his testimony that he believed that Mother "was in a coma or in rehab" when her daughter was graduating from school.

Father also argues the gifts Mother received from her mother should have merited a deviation in the arrears that accrued prior to October 7, 2019. Mother testified that these gifts were due to her being unable to support herself and that they were being phased out now that Mother has secured full-time employment. This court was not persuaded that further deviation was warranted and found no error with the hearing officer's calculation of the parties' incomes.

Trial Ct. Op., 1/19/22, at 5 (citations omitted and formatting altered).

To the extent Father challenges the trial court's calculation of his gross income, we note that the child support guidelines are based on an individual's monthly **net** income, not annual gross income. **See Berry**, 898 A.2d at 1107; **see also** Pa.R.C.P. 1910.16-2 (stating "[g]enerally, the basic child support, . . . obligation is based on the parties' monthly net incomes"). Further, although Father refers to his 2018 W-2, that document is not included in the certified record. **See O'Brien**, 898 A.2d at 1082 (stating "[i]t is an appellant's duty to insure that the certified record contains all documents necessary for appellate review" (citation and footnote omitted)). Finally, Father fails to provide any calculation of what he believes to be the "correct" monthly guideline amount.

Under these circumstances, Father's contention is no more than a bald claim of error, and he is not entitled to relief on this claim.

The record reflects Mother's testimony that she had reduced her working hours because of her medical condition. *See* R.R. at 20a-22a. Specifically, Mother testified that she had an allergic reaction to a medication she was prescribed following surgery for a left atrial myxoma. *See id.* Mother explained that she was comatose for five weeks in 2015. *See id.* at 301a. She also testified that she easily loses her voice if she speaks for long periods of time, has poor endurance, and problems with balance. *See id.* at 21a. Mother also testified that due to her illness, her mother provided financial support in the amount of $3,000 per month. *See id.* at 35a. Mother explained that those monthly payments were gradually discontinued after Mother returned to full-time employment. *See id.* at 369a-70a. It is the province of the trial court to determine the credibility of witnesses, and this Court may not substitute our judgment for that of the trial court. *See Sirio*, 951 A.2d at 1195; *Doherty*, 859 A.2d at 812. Therefore, we discern no abuse of discretion in the trial court's conclusion that Mother did not voluntarily reduce her income. *See Smedley*, 2 A.3d at 1228. Further, because gifts are not income for the purposes of determining child support and do not require a deviation from the support guidelines, the trial court did not abuse its discretion by concluding that the gifts Mother received did not warrant a deviation. *See Suzanne D.*, 65 A.3d at 970; *Summers*, 35 A.3d at 788.

## Making the Support Order a Non-PACSES Order

In his final issue, Father argues that the trial court erred in making the instant support order a non-PACSES order.  Father's Brief at 32-33.  Father contends that "[b]y closing the case on PACSES, Father's ability to file a modification appears impossible."  ***Id.***

Section 4352 of the Domestic Relations Code states:

The court making an order of support shall at all times maintain jurisdiction of the matter for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or rescinding the order . . . .  **A petition for modification of a support order may be filed at any time** and shall be granted if the requesting party demonstrates a substantial change in circumstances.

23 Pa.C.S. § 4352(a) (emphasis added).

The Rules of Civil Procedure governing support orders provide:

A petition for modification or termination of an existing support order shall specifically aver the material and substantial change in circumstances upon which the petition is based.  A new guideline amount resulting from new or revised support guidelines may constitute a material and substantial change in circumstances. The existence of additional income, income sources or assets identified through automated methods or otherwise may also constitute a material and substantial change in circumstances.

Pa.R.C.P. 1910.19(a).  A comment to Rule 1910.19 explains that "automated methods" refers to PACSES.  Pa.R.C.P. 1910.19, Explanatory Comment— 2000.  The comment further provides that "[i]dentification through means other than PACSES continues to provide the same basis for modification."  ***Id.***

Here, the trial explained:

Father alleges that the hearing officer erred by designating the recommended order as a "non-[PACSES]" order and closing the case on [PACSES]. Father requests that the court "provide a clear avenue by which either party may readdress the support issue in the event a material and substantial change in circumstance occurs." However, in this instance, Father seems to have missed the distinction between case closure and closing a case on [PACSES]. PACSES is an acronym for the Pennsylvania Automated Child Support Enforcement System. The Pennsylvania Child Support Handbook explains [PACSES] as the following:

> PACSES is the statewide computer system that is used by the county domestic relations sections. Case, personal and payment information are maintained in PACSES. DRS staff use PACSES to monitor support payments and enforce support orders.

> *Id.* at 4. While [PACSES] is an integral part of our child support system, closure of a case on [PACSES] is entirely separate from termination of a child support action as a matter of law. Moreover, at no point does the hearing officer state that the recommended order is nonmodifiable through the filing of a petition for modification. As such, this court finds no error with the designation of the order as a "non-[PACSES]" order and the closure of the case on [PACSES].

Trial Ct. Op., 1/19/22, at 7-8 (formatting altered).

Following our review, we agree with the trial court's conclusions. None of the statutes or rules of procedure related to support actions require an active PACSES case for a party to file a petition to modify a support order. *See* 23 Pa.C.S. § 4352(a); Pa.R.C.P. 1910.19(a); Pa.R.C.P. 1910.19, Explanatory Comment—2000. Therefore, we discern no abuse of discretion by the trial court making its order a non-PACSES order, and Father is not entitled to relief on this claim.

For these reasons, we affirm the trial court's order.

Order affirmed.

Judge Musmanno did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/10/2022