J-S13016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MOLLY MCCULLAGH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DUSTIN BUCKLEY | : | No. 1626 MDA 2024 |

Appeal from the Order Entered October 4, 2024
In the Court of Common Pleas of Centre County Domestic Relations at
No(s): 2024-00046-S,
PACSES No. 502302657

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JULY 16, 2025**

Molly McCullagh ("Mother") appeals from the amended order entered by the Centre County Court of Common Pleas adjusting Dustin Buckley's ("Father") support obligation and earning capacity. She claims Father's earning capacity should be significantly higher. We affirm.

The trial court discussed the following factual and procedural history.

> [Mother] filed a new complaint for support [against Father] on March 20, 2024. Following a conference with a conference officer, an unallocated support Order was entered requiring [Father] to pay $4,269.00 per month to [Mother]. At the time of the support conference in May, [Father] reported imminent plans to change employment when his then-assignment ended in June due to the high stress and danger of his job and because the work required him to live in Baghdad, away from [Mother and Father's] eight-year-old daughter, for most of the year. As [Father] had not yet changed jobs, the conference officer calculated support based on [Father]'s 2023 annual income of $201,970.29, plus Veterans Affairs disability benefits.

[Father] filed a demand for a *de novo* hearing on June 20, 2024. In the demand, [Father] raised two issues, [but only proceeded with one]: First, [Father] contends the conference officer erred in determining his income and earning capacity… A hearing was held on August 6, 2024. [Father] presented evidence only as to the issue regarding the change in his employment status and his income and earning capacity…

Trial Court Opinion, 10/4/24, at 1.

By the time of the *de novo* hearing, Father had left his previous employment overseas and had moved back to Centre County, Pennsylvania, and was actively looking for a new job. Father argued that his change in employment was not motivated by a desire to avoid support, that his most recent past earnings were not an appropriate measure of his earning capacity, and that, commensurate with his current education and experience, his income should be assessed at an earning capacity of $50,000 to $55,000 per year. Mother argued that the timing of Father's career change so close to her filing for support was suspect, and that Father was simply trying to reduce his support obligation. Mother asserted Father's income should be calculated based on his 2023 earnings.

The trial court concluded that Father's income should be reduced to $55,000 per year beginning on July 1, 2024.

At the time of separation, [Father] worked for Triple Canopy, Inc., a company that contracts with the Department of State to provide protective services. [Father] was employed by Triple Canopy as a protective security specialist/paramedic doing bodyguard work for the ambassador of Baghdad when the ambassador traveled to and from the embassy. The work was demanding and dangerous. [Father] worked a minimum of 72 hours per

week and was on-call for overtime hours on an as-needed basis. His job required him to live in Baghdad for most of the year; he would spend 126 days in Baghdad working, followed by a 42 day break to return home before the next 126-day period of service in Baghdad.

During the marriage, it was the understanding of both parties that [Father]'s employment with Triple Canopy would not be long-term. He began this work in June of 2018 with the idea that it would be a short-term way for the family to pay the mortgage and build a nest egg for the future, and that he would return to earn a college degree and get a job. [Father] testified that he left the Triple Canopy job after his last assignment ended because the stress and danger involved with the work made it unsustainable long-term, and because he wanted to be present to exercise regular, consistent custodial periods with [Mother's and his] eight-year-old daughter so as to support her during this stressful time for the family and to foster his relationship with her.

T.C.O. at 2-3.

The court found Father's testimony credible, and concluded Father was not motivated by a desire to avoid paying support. The trial court found Father attempted to mitigate his reduced earnings. Based on the evidence presented, the court concluded that $55,000 per year was an appropriate measure of [Father]'s current earning capacity.

Mother timely appealed. Mother and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Mother raises the following four issues on appeal, all pertaining to whether the trial court erred in determining Father's income for purposes of calculating his support obligations.

1. Whether the Trial Court abused its discretion and/or committed errors of law in determining [Father]'s most

recent past earnings were not an appropriate measure of his current earning capacity?

2. Whether the Trial Court abused its discretion and/or committed errors of law in determining that $55,000 was an appropriate measure of [Father]'s present earning capacity?

3. Whether the Trial Court abused its discretion in determining the evidence of record supports $55,000 as an appropriate measure of [Father]'s present earning capacity?

4. Whether the Trial Court abused its discretion and/or committed errors of law in its application of Pa.R.Civ.P. 1910.16-2(d)(1)?

Mother's Brief at 3-4.

In an appeal from a support order, the appellate court's standard of review is as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

**Summers v. Summers**, 35 A.3d 786, 788 (Pa. 2012).

The appellate court will defer to the trial court's factual findings that are supported by the record and its credibility determinations. **M.G. v. L.D.**, 155 A.3d 1083, 1091 (Pa. Super. 2017) (citations omitted).

The issues in this case all concern whether the trial court abused its discretion in downwardly adjusting Father's income when he left his job

- 4 -

overseas to return to Centre County. The Pennsylvania Rules of Civil Procedure address a party's voluntary income reduction as follows:

**(d) Reduced Income or Fluctuating Earnings**.

(1) *Voluntary Income Reduction--Existing Orders*. The trier-of-fact shall not downwardly adjust a party's net income from an existing order if the trier-of-fact finds that:

(i) the party's income reduction resulted from the party willfully attempting to favorably affect the party's basic support obligation; or

(ii) the party voluntarily assumed a lower paying job, quit a job, left employment, changed occupations, changed employment status to pursue an education, or employment is terminated due to willful misconduct.

Pa.R.Civ.P. 1910.16-2(d)(1)(i-ii).

This court has determined that a party requesting a reduction to modify a support order based on a voluntary reduction in income must demonstrate two things: 1) that the change was not made to avoid child support; and 2) that the party made sufficient efforts to mitigate the lost income as to warrant the reduction. ***Ewing v. Ewing***, 843 A.2d 1282, 1287-88 (Pa. Super. 1999).

On appeal, Mother addresses her four issues together, so we do the same.[1] Mother argues that Father's voluntary reduction in income was for the

---

[1] We remind counsel that Appellate Rule 2119(a) requires the argument section of the appellate brief to be divided into as many parts as there are questions to be answered and that each part address the issue raised therein. Combining all issues into one argument, without headings, is strongly disfavored.

purpose of reducing child and spousal support, and that Father did not make significant effort to mitigate this reduction in income.

First, Mother argues that Father left work voluntarily, and she contends that Father did so to lower his support obligations. She argues the timing of his job change was suspect because he resigned nine days prior to the initial support conference.

The trial court found that Father's voluntary reduction in income was not a willful attempt to avoid paying support. Instead, Father's decision to leave the job in Baghdad was reasonable and appropriate under the circumstances as the work done by Father was demanding and dangerous. Father's job required him to live in Baghdad for most of the year.

Also, the trial court found that during the marriage, it was the understanding of both parties that Father's employment would not be long-term. Mother testified that she had asked Father to leave his job two years ago, and had looked at other jobs for him, including one of the jobs that Father applied for in Centre County. *See* N.T. at 59. According to Father, Mother knew that the job in Baghdad was never a long-term employment situation. He and Mother had agreed that when he accepted the position with Triple Canopy it was only to be a temporary sacrifice of being gone so much "to earn a lot of money, with the intent of paying off their mortgage, create a nest egg so he could afford to come back and finish his bachelor's degree and get a better job back in the United States in order to be present in their daughter's life." *Id.* at 13-14.

Father also noticed that the divorce proceedings were taking a toll on the daughter, and he wanted to be present in her life to preserve that relationship and watch her grow up. *Id.* Although, as Mother contends, the timing of Father's resignation came only nine days prior to the initial support hearing, the trial court, nonetheless, found Father's reason for leaving to be justified. The trial court found Father's testimony that he left his job because of the high stress and danger, and that he wanted to be present to exercise regular, consistent custodial periods with the parties' eight-year-old daughter to be credible. Thus, the trial court concluded that Father was not motivated by a desire to avoid paying support. As the record supports this conclusion, we discern no abuse of discretion.

Second, Mother argues that Father's efforts to mitigate cannot reasonably be considered sufficient, nor are the positions to which he applied appropriate. Mother argues that Father had only applied to new jobs just days before the initial support conference. Mother contends these jobs are not appropriate for Father, as his fifteen years' experience deem him overqualified for entry level security positions. Mother further argues that the trial court should have considered the fact that Father submitted his resignation before obtaining new employment when determining whether Father made sufficient efforts to mitigate his voluntary reduction of income.

Father testified that he applied for security positions with ARL in May 2024 while he was still away in Baghdad. *Id.* Father also testified to applying for jobs commensurate with his experience, specifically security positions with

Raytheon Technologies, the local hospital, Sheetz, Gates Foundation, Pinkerton Organization, TSA, and the Navy. *Id.* at 15-16. Although he had not heard back from all of these prospective employers, he did have interviews with three of them. *Id.*

The trial court determined that Father had presented sufficient evidence regarding his efforts to mitigate his reduced earnings. It also found Father credibly testified that he had been engaged in an ongoing job search since leaving his job at Triple Canopy and moving back to the states and Centre County. We will not disturb this credibility determination. *See M.G.*, *supra*. Moreover, we can not say the trial court was manifestly unreasonable in allowing Father to return home from a dangerous assignment overseas to look for employment near his daughter when both parties agreed his overseas work would be temporary. Thus, Mother's mitigation argument fails, and Father met both *Ewing* factors to support a voluntary reduction in income.

Lastly, Mother argues that the assessment of Father's earning capacity at $55,000 is not appropriate. Instead, Mother contends that the last six years of Father's earnings of approximately $200,000 per year, should have been considered. Father testified that prior to his employment with Triple Canopy, he had never earned that kind of income. N.T. at 18.

By way of background, the trial court observed that Father is approximately forty years old. Before starting employment in Baghdad, Father worked for the Penn State Police doing security work where he earned $36,000 per year. He is a high school graduate and has earned some credits toward a

college degree. He would like to complete coursework for a bachelor's degree and needs thirty-three additional credits for a degree in international politics with a national security focus. Father testified that there are no stateside jobs comparable in salary to his previous job in Baghdad, and that the jobs he has applied for, and for which he is currently qualified, have salary ranges from $39,000 to $55,000 per year. *Id.* at 17-18. Father testified that at the time of the hearing he had no job but asked the court to assess his earning capacity to be between $50,000 and $55,000. *Id.* at 24.

Father further testified that his income in Baghdad was largely due to danger pay that was for certain areas of the world that are more prone to violent outburst, that Baghdad was the highest, and that there are no comparable jobs stateside. *Id.* at 19. Father stated that upon finishing his bachelor's degree, he would have a lot more job opportunities open to him that would increase his earning capacity. *Id.* at 23.

The trial court concluded that Father's most recent past earnings were not an appropriate measure of his earning capacity outside of the dangerous environment he left. The trial court found Father's testimony to be credible and set Father's earning capacity at $55,000, effective on July 1, 2024.[2]

Mother did not provide any evidence to contradict Father's $55,000 earning capacity aside from stating that Father should have the same earnings

---

[2] From May 2024 to July 2024, Father's support obligation was determined from his 2023 income. Thus, Mother's appeal only challenges the support obligation calculation effective July 1, 2024.

he had in Baghdad indefinitely. The trial court had already determined that Father was justified in leaving the Baghdad position. Moreover, the trial court accepted Father's testimony that security jobs in State College did not offer comparable pay to his Baghdad employment. Thus, we find no abuse of discretion in setting Father's earning capacity at $55,000 per year beginning July 1, 2024. Mother's last argument merits no relief.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2025